[No. 86776-3. En Banc.]
Argued June 28, 2012. Decided January 17, 2013.

JEFFREY MANARY, *as Second Successor Trustee, Petitioner*, v.
EDWIN A. ANDERSON, *as Personal Representative*,
*Respondent*.

Thomas G. Burke (of Burke Law Offices Inc. PS), for petitioner.

John M. Casey (of Curran Law Firm) and Andrea Schiers (of Seattle Public Schools), for respondent.

¶1 FAIRHURST, J. — In this case, we are asked to decide whether Jeffrey Manary or Edwin A. Anderson is entitled to a decedent's interest in real property that had been deeded to a trust. Manary claims the interest as a successor trustee; his claim is based on the trust. Anderson claims the interest as a testamentary beneficiary; his claim is based on chapter 11.11 RCW, the Testamentary Disposition of Nonprobate Assets Act (Act).[1] The Act allows the "owner" of a "nonprobate asset" to dispose of the asset by will if the owner "specifically refer[s] to" the asset in his will. RCW 11.11.020(1). When an owner complies with the Act, the owner's interest in the nonprobate asset belongs to the testamentary beneficiary named to receive it, notwithstanding any previously designated beneficiary. Id.

¶2 We hold that an owner complies with the Act when he specifically refers to a nonprobate asset in his will, even if

---

[1] Commentators often refer to the Act as the "Super Will" (or Superwill) statute. See, e.g., MARK REUTLINGER, WASHINGTON LAW OF WILLS & INTESTATE SUCCESSION 345 (Wash. State Bar Ass'n 2d ed. 2006); Cynthia J. Artura, Superwill to the Rescue? How Washington's Statute Falls Short of Being a Hero in the Field of Trust and Probate Law, 74 WASH. L. REV. 799 (1999).

he does not refer to the instrument under which the asset passes. Anderson is entitled to the decedent's interest in the property, but he is not entitled to attorney fees for answering the petition for review.

## I. FACTS

¶3 In 1995, Homer L. and Eileen M. Greene, a married couple, entered into "The Homer L. Greene and Eileen M. Greene Revocable Living Trust Agreement" (Trust). Clerk's Papers (CP) at 44. Homer and Eileen[2] served as trustors, grantors, and trustees. They named three beneficiaries.

¶4 The Property. Homer and Eileen funded the Trust by conveying the title of their community property residence to themselves as trustees and to all successor trustees. They retained the right to possess and manage the property rent free.

¶5 Revocability During Joint Life. Homer and Eileen declared the "Trust to be revocable during their joint lifetimes," but they limited each trustor's power to amend or revoke the Trust "to the extent of such Trustor's community and separate property interests." CP at 46. Accordingly, neither trustee had the power to amend or revoke the Trust during joint life "with respect to the other Trustor's community property interest or separate property interest." *Id.*

¶6 Division of the Trust Estate. After the first spouse died, the surviving trustee was to divide the Trust into two separate trusts: the "Family Trust" and the "Survivor's Trust." CP at 52. The Family Trust was to consist of the decedent spouse's interest in community and separate property, and the Survivor's Trust was to consist of the surviving spouse's interest in community and separate property. However, "[f]or purposes of administrative convenience," the surviving trustee could "retain that amount

---

[2] For clarity, we refer to Homer and Eileen Greene by their first names. We mean no disrespect.

passing to the Survivor's Trust in the trust estate originally established . . . instead of distributing it to the Survivor's Trust." CP at 53. In that case, "the remaining balance of the original Trust [would] become the 'Survivor's Trust.'" *Id.*

¶7 Irrevocability/Revocability after the Death of One Spouse. The Family Trust was to be irrevocable, but the Survivor's Trust would remain revocable by the survivor. Even if the survivor's interest in the original Trust were to become the Survivor's Trust, the "rights of revocation, amendment, modification or withdrawal [would] continue to apply to the Survivor with respect to the Survivor's Trust." CP at 54.

¶8 Irrevocability after the Death of Both Spouses. Homer and Eileen agreed that the entire Trust agreement would become irrevocable "[u]pon the death or incapacity of both of the Trustors." CP at 47.

¶9 In 1998, Eileen died[3] and Homer became the sole trustee of the Trust. He consulted with counsel but did not create a separate Family Trust or Survivor's Trust.

¶10 In 1999, Homer amended the Trust.[4] He removed the original beneficiaries and named his sister, Alice,[5] as sole beneficiary and first successor trustee.[6] He also named his nephew, Manary, as second successor trustee. Homer did

---

[3] Eileen's will provides that her estate should pass to the trustee of the Trust, but in the event that bequest fails, then to Homer. CP at 32.

[4] This amendment is styled as the "Second Amendment" to the Trust. CP at 94. It appears that Homer and Eileen previously attempted to amend the Trust to remove a named beneficiary, but they never signed, initialed, or dated the amendment. The original trust document therefore controls. *See In re Estate of Tosh*, 83 Wn. App. 158, 920 P.2d 1230 (1996).

[5] Homer's sister is Alice Manary. We refer to her as "Alice" for the sake of clarity and intend no disrespect.

[6] The parties dispute whether the amendment operated to change the beneficiaries of the entire Trust or only Homer's interests in the Trust. After the Court of Appeals declined to reach the issue, Manary sought review of the court's holding that the amendment "was not relevant." Pet. for Review at 5. But the Court of Appeals did not hold that the issue was not *relevant*; it held that the issue was not *reviewable*. *Manary v. Anderson*, 164 Wn. App. 569, 573, 265 P.3d 163 (2011). Because the issue has not yet been litigated below, the Court of Appeals is correct.

not amend or modify any of the Trust's terms regarding the property at issue here.

¶11 In 2002, Anderson, who had been acquainted with Homer and Eileen since 1956 and good friends with Homer since 1975, became Homer's companion and caretaker. He began living in a trailer parked in the driveway of the property. Anderson managed Homer's medications, drove him to doctor's appointments, and monitored his temperature and blood pressure as needed. He also did Homer's yard work, ran his errands, and assisted him with everyday tasks.

¶12 On November 4, 2004, Homer executed a last will and testament.[7] He did not mention the Trust in the will, but he indicated his intent to give the property to Anderson. Specifically, after the form language "I give, devise and bequeath," Homer wrote, "Real property, consisting of my home (ref: Tax # 3223-9085-09) at 18616 102nd Ave S.E. Renton, WA 98055 . . . to Edwin A. Anderson." CP at 101. Homer also named Anderson as alternate executor of his estate. *Id.*

¶13 In 2007, Homer died and Anderson took possession of the residence on the property. Anderson was later appointed personal representative of Homer's estate.

## II. PROCEDURAL HISTORY

¶14 In October 2008, Alice instituted an action in King County Superior Court to quiet title and eject Anderson from the property. Anderson counterclaimed, also seeking to quiet title. Alice died in 2009. Manary was then appointed the second successor trustee and was substituted as plaintiff. Both parties submitted cross motions for partial summary judgment, claiming a right to Homer's interest in the property.

---

[7] On the same day, Homer also executed a form statutory warranty deed granting Anderson a "co-ownership joint occupancy" interest in the property in exchange for one dollar. CP at 98. Anderson acknowledged during oral argument that the deed is probably not effective, but the deed is not before us.

¶15 The trial court found for Manary. It concluded that Homer's attempted bequest was invalid because Homer failed to "either modify the Trust as to the Property or to acknowledge the Trust in . . . his Will."[8] CP at 243. According to the trial court, the property remained Trust property and Homer had no interest in it to convey to Anderson. The trial court quieted all title interests in the Trust and dismissed Anderson's counterclaims with prejudice.

¶16 The Court of Appeals found for Anderson. It noted, "Nothing in the statute requires Homer's will to mention the trust in order for RCW 11.11.020 to be effective." *Manary v. Anderson*, 164 Wn. App. 569, 578, 265 P.3d 163 (2011). It held that the property was a "nonprobate asset," declared Anderson the rightful owner, and reversed the trial court. *Id.* at 577.

¶17 Manary sought this court's review, which we granted. *Manary v. Anderson*, 173 Wn.2d 1023, 272 P.3d 851 (2012). Anderson seeks attorney fees for answering the petition for review.

## III. STANDARDS OF REVIEW

¶18 Summary judgment is appropriate if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002). We review summary judgment orders de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

¶19 The meaning of a statute is a question of law we review de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001). In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's

---

[8] The trial court also found that Homer had not validly transferred the property by warranty deed and declared the deed null and void.

intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

## IV. ISSUES

¶20 A. Under the plain meaning of the Act, is Anderson entitled to Homer's interest in the property?

¶21 B. Do Manary's additional arguments overcome the plain meaning of the Act?

¶22 C. Is Anderson entitled to attorney fees for answering the petition for review?

## V. ANALYSIS

 ¶23 Under former Washington law, "it [was] impossible for a person through a new will to modify non-probate asset arrangements." S.B. REP. on S.B. 6181, 55th Leg., Reg. Sess. (Wash. 1998). But the Act, which was enacted in 1998,[9] allows the owner of a limited class of nonprobate assets to dispose of those assets by will. MARK REUTLINGER, WASHINGTON LAW OF WILLS & INTESTATE SUCCESSION 345 (Wash. State Bar Ass'n 2d ed. 2006). The Act has three purposes: (1) to enhance testators' power to control the disposition of the assets that pass outside their wills, (2) to provide simple dispute resolution procedures regarding entitlement to such assets, and (3) to protect financial institutions or third parties having control of such assets and transferring them to duly designated beneficiaries. RCW 11.11.003. The provisions of the Act must be liberally construed to promote these purposes. RCW 11.11.005(1)(a).

¶24 Manary argues that the Act does not apply because the property is not a nonprobate asset, Anderson did not meet the Act's requirements, and the will bequest is generally insufficient. Anderson argues that the Act controls

---

[9] Washington was the first state to adopt such a statute. REUTLINGER, *supra*, at 345. "Because the statute is quite recent and without any precedent, to date there is little case law interpreting it." *Id.*

because the property is a nonprobate asset and Homer's specific bequest to Anderson supersedes any contrary provisions in the Trust. To resolve this case, we consider the plain meaning of the Act, Manary's arguments, and Anderson's request for attorney fees.

A. Under the Plain Meaning of the Act, Anderson Is Entitled to Homer's Interest in the Property

¶25 Statutory interpretation begins with a statute's plain meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). If the meaning of the statute "is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. Our plain meaning inquiry focuses on the words of the statute and "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11.

¶26 "The basic operation of the [Act] is quite simple." REUTLINGER, *supra*, at 346. Under RCW 11.11.020(1), an "owner's interest in any nonprobate asset specifically referred to in the owner's will belongs to the testamentary beneficiary named to receive the nonprobate asset, notwithstanding the rights of any beneficiary designated before the date of the will."[10] To determine the plain meaning of RCW 11.11.020(1), we consider four key words/phrases: "nonprobate asset," "owner," "testamentary beneficiary," and "specifically referred to." RCW 11.11.020. We also consider what RCW 11.11.020(1) *does not* require.

1. *The property is a nonprobate asset*

¶27 The definition section of the Act states that " '[n]onprobate asset' means a nonprobate asset within the meaning of RCW 11.02.005, but excluding the [four exceptions]." RCW 11.11.010(7)(a). Under former RCW 11.02-

---

[10] RCW 11.11.020(1) is subject to community property rights.

.005(15) (2007), " '[n]onprobate asset' means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will."[11] The four exceptions excluded from the definition of "nonprobate asset" in the Act are:

(i) A right or interest in real property passing under a joint tenancy with right of survivorship;

(ii) A deed or conveyance for which possession has been postponed until the death of the owner;

(iii) A right or interest passing under a community property agreement; and

(iv) An individual retirement account or bond.

RCW 11.11.010(7)(a).

¶28 Here the property squarely fits the definition of a " '[n]onprobate asset' " found in former RCW 11.02.005(15).

---

[11] Former RCW 11.02.005(15) reads in its entirety:

"Nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will. "Nonprobate asset" includes, but is not limited to, a right or interest passing under a joint tenancy with right of survivorship, joint bank account with right of survivorship, payable on death or trust bank account, transfer on death security or security account, deed or conveyance if possession has been postponed until the death of the person, trust of which the person is grantor and that becomes effective or irrevocable only upon the person's death, community property agreement, individual retirement account or bond, or note or other contract the payment or performance of which is affected by the death of the person. "Nonprobate asset" does not include: A payable-on-death provision of a life insurance policy, annuity, or other similar contract, or of an employee benefit plan; a right or interest passing by descent and distribution under chapter 11.04 RCW; a right or interest if, before death, the person has irrevocably transferred the right or interest, the person has waived the power to transfer it or, in the case of contractual arrangement, the person has waived the unilateral right to rescind or modify the arrangement; or a right or interest held by the person solely in a fiduciary capacity. For the definition of "nonprobate asset" relating to revocation of a provision for a former spouse upon dissolution of marriage or declaration of invalidity of marriage, RCW 11.07.010(5) applies. For the definition of "nonprobate asset" relating to revocation of a provision for a former spouse upon dissolution of marriage or declaration of invalidity of marriage, see RCW 11.07.010(5). For the definition of "nonprobate asset" relating to testamentary disposition of nonprobate assets, see RCW 11.11.010(7).

Homer and Eileen had beneficial ownership of the property—the right to live there rent free. When they died, their rights and interests in the property were to pass under the Trust, a written instrument other than their wills. The Act requires no more.

¶29 The property also fits one of the statutory examples of a nonprobate asset: "a right or interest passing under a [revocable] trust." Former RCW 11.02.005(15). The question of revocability is somewhat complicated here because Homer failed to create two separate trusts after Eileen's death. However, "the Trust provisions regarding the Survivor's Trust nevertheless demonstrate how each Trustor's respective separate and community property interest in Trust assets were to be treated throughout the life of the Trust, regardless of the specific form the Trust(s) took." Reply Br. of Appellant at 2 n.2. The Trust permitted Homer to either create a separate Survivor's Trust or to retain his interests in the original Trust, which would then become the Survivor's Trust. Either way, Homer retained the right to revoke his interest in the Survivor's Trust and Homer's failure to create the Family Trust does not deprive him of this right.

¶30 The dissent argues that Homer's failure to create the Family Trust deprived him of his right to revoke his interest in the Survivor's Trust. In support of this position, the dissent references section 1.06(b) of the Trust agreement, which explains that the Trust was revocable during Homer and Eileen's joint lifetimes. But section 1.06(b) simply reaffirmed Homer and Eileen's attempt to create a revocable trust. Further, the Trust provided that the entire Trust agreement was to become irrevocable only "[u]pon the death or incapacity of *both of the Trustors*." CP at 47 (emphasis added). Accordingly, Homer's interest in the property passes under a revocable trust and the property fits a statutory example of a nonprobate asset.

¶31 Manary primarily argues that the property is not covered by the Act because it is excluded by RCW 11.11-

.010(7)(a)(ii). As noted above, RCW 11.11.010(7)(a)(ii) excludes a "deed or conveyance for which possession has been postponed until the death of the owner." Agreeing with Manary, the dissent erroneously concludes that because Anderson was bequeathed a conveyance that postponed possession until Homer's death, the property falls under the exception in RCW 11.11.010(7)(a)(ii).

¶32 Manary and the dissent misread RCW 11.11-.010(7)(a)(ii). The provision is not concerned about a beneficiary's possession of property being postponed until the death of the owner—property not passing to a beneficiary until the owner's death is the very concept of a testamentary disposition and a nonprobate asset. If the exception in RCW 11.11.010(7)(a)(ii) was concerned about a beneficiary's possession being postponed until the owner's death, then, under that interpretation, real property could never be a nonprobate asset under the Act and the language in the first exception, RCW 11.11.010(7)(a)(i), would be superfluous. *See* RCW 11.11.010(7)(a)(i) ("A right or interest in real property passing under a joint tenancy with right of survivorship.").

¶33 Rather, the exception in RCW 11.11.010(7)(a)(ii) relates to an owner's future interest in property and whether the owner died before he or she was in possession of that property. In other words, RCW 11.11.010(7)(a)(ii) does not exclude all real estate interests, but only joint tenancies and future interests. *Manary,* 164 Wn. App. at 578; *Probate Law Task Force, Testamentary Disposition of Nonprobate Assets Provisions* cmt. to § .040 (now codified as RCW 11.11.040), at 6 (on file with Wash. State Bar Ass'n, Real Property, Probate & Trust Section) ("[T]he SuperWill statute is not to apply to real property joint tenancies or to future interest deeds."), http//:www.wsbarppt.com/comments/rcw1111comments.pdf (last visited Jan. 14, 2013). Because Homer's interest in the property is not a joint tenancy or a future interest, RCW 11.11.010(7)(a) does not pertain to this case.

¶34 We conclude that the property is a nonprobate asset for purposes of the Act. The property fits the definition of a " '[n]onprobate asset' " found in former RCW 11.02.005(15), fits an example of a nonprobate asset found in former RCW 11.02.005(15), and is not excluded by RCW 11.11.010(7)(a).

### 2. *Homer is an " '[o]wner' "*

¶35 An " '[o]wner' " is "a person, who, during life, has beneficial ownership of the nonprobate asset." RCW 11.11-.010(8). In property law, the expression "beneficial ownership" generally means such a right to the property's enjoyment that exists when legal title is vested in one party and the right to such beneficial use or interest is vested in another. *Christiansen v. Dep't of Soc. Sec.*, 15 Wn.2d 465, 467, 131 P.2d 189 (1942). Homer is an owner of the property pursuant to the statute. As noted above, the property is a nonprobate asset and during life, Homer had the right to manage and live on the property rent free.

### 3. *Anderson is a " '[t]estamentary beneficiary' "*

¶36 A " '[t]estamentary beneficiary' " is "a person named under the owner's will to receive a nonprobate asset." RCW 11.11.010(10). Anderson is named under Homer's will to receive Homer's interest in the property, a nonprobate asset, so Anderson is a testamentary beneficiary.

### 4. *Homer specifically referred to the property in his will*

¶37 The Act does not directly define the phrase "specifically referred to" but instead provides examples. RCW 11.11.020(1). A will generally disposing of "all of the owner's property" or making a "general residuary gift" does not entitle the devisees or legatees to receive an owner's nonprobate assets. RCW 11.11.020(2). Therefore, a testator who bequeaths "the 'rest, residue and remainder of [his] estate' " to two testamentary beneficiaries has not changed the beneficiary designations of his nonprobate assets. *In re*

*Estate of Furst*, 113 Wn. App. 839, 842, 55 P.3d 664 (2002). Likewise, the designation of " 'certain bank accounts and savings accounts' " is not specific enough to change the beneficiary of a testatrix's "payable on death accounts" without more, such as the bank account numbers. *In re Estate of Burks*, 124 Wn. App. 327, 331-33, 100 P.3d 328 (2004). However, a will that disposes of an owner's interest in " 'all nonprobate assets' " is deemed to dispose of all the nonprobate assets, as is a will that disposes of "a category of nonprobate asset[s]." RCW 11.11.020(3).

¶38 Here, Homer does not mention the Trust in his will but he specifically refers to the property, including the tax parcel number and street address. Homer therefore made a more specific reference to the contested asset than either Furst or Burks. And Manary appears to concede that Homer's reference to the property is a "specific bequest." Br. of Resp't at 9. Accordingly, for purposes of the Act, Homer specifically referred to the property in his will.

### 5. *The Act does not require an owner to reference the will substitute*

¶39 Nothing in the Act requires an owner to mention the written instrument in his will. RCW 11.11-.020(1). While it could be argued that "[a] valid SuperWill *should* specifically mention the nonprobate devices negated and, in addition, provide for the subsequent disposition of the will substitutes' assets," our legislature did not impose both requirements. Mark L. Kaufmann, *Should the Dead Hand Tighten Its Grasp: An Analysis of the Superwill*, 1988 UNIV. ILL. L. REV. 1019, 1032 (1988) (emphasis added) (footnote omitted). "Where the Legislature omits language from a statute, intentionally or inadvertently, this court will not read into the statute the language that it believes was omitted." *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002). We are particularly mindful of this principle here because the statute must be liberally construed to facilitate the power of testators to control the disposition of assets passing outside their wills. RCW 11.11.003, .005.

¶40 In sum, Homer complied with the Act. Under the plain meaning of RCW 11.11.020(1), Homer was an owner who bequeathed his interest in a nonprobate asset to a testamentary beneficiary by specifically referring to the nonprobate asset in his will. Because the Act does not require an owner to specifically refer to the instrument under which a nonprobate asset passes, Homer's failure to mention the Trust does not defeat his bequest.

B. Manary's Additional Arguments Do Not Overcome the Plain Meaning of the Act

¶41 To support his motion for partial summary judgment, Manary advances several additional arguments. Manary first argues that even if the Act applies, Anderson is barred from recovery because he failed to comply with the Act's notice and petition requirements. He also contends, based on *Furst*, 113 Wn. App. at 839, that even if the Act entitles Anderson to relief, the will bequest is insufficient because Homer was attempting to revoke the Trust and the Trust is irrevocable as to the property. Manary then argues that Homer could not remove the property from the Trust because the property was owned by the Trust, not Homer. Finally, Manary argues that Homer failed to substantially follow the Trust requirements. As will be explained below, all four of these arguments are meritless.

1. *Anderson's recovery is not barred*

¶42 Manary contends that even if the Act applies, Anderson is barred from recovery because he failed to notify Alice when he took possession of the property. RCW 11.11-.050(1) requires written notice to be served "on the financial institution or other third party having the nonprobate asset in its possession or control." But RCW 11.11.050(1) protects financial institutions and other third persons who control the nonprobate asset and "follow[ ] the terms of the instrument as it appears, rather than the will of which it may have no knowledge." REUTLINGER, *supra*, at 348; *see* RCW

11.11.003(3) (The third purpose of the Act is to protect financial institutions or third parties having control of nonprobate assets and transferring them to duly designated beneficiaries.). Because Alice never had the property in her "possession or control," there was no danger that she might make an improper transfer and Anderson was not required to give her notice. RCW 11.11.050(1).

¶43 Manary next argues that Anderson is barred from recovery because he failed to timely petition the court. RCW 11.11.070.[12] RCW 11.11.070(2) permits a testamentary beneficiary to petition the court for relief when a nonprobate asset has been transferred to an unentitled beneficiary. The testamentary beneficiary must seek relief within six months of the admission of the owner's will to probate or one year from the date of the owner's death, whichever is earlier. RCW 11.11.070(3). But the time limit applies only when a nonprobate asset has been transferred to an unentitled beneficiary. RCW 11.11.070(2). Because the property was not transferred to anyone following Homer's death, Anderson was not required to petition the court for relief.

---

[12] RCW 11.11.070 reads:

(1) The protection accorded to financial institutions and other third parties under RCW 11.11.040 has no bearing on the actual rights of ownership to nonprobate assets as between beneficiaries and testamentary beneficiaries, and their heirs, successors, personal representatives, and assigns.

(2) A testamentary beneficiary entitled to a nonprobate asset otherwise transferred to a beneficiary not so entitled, and a personal representative of the owner's estate on behalf of the testamentary beneficiary, may petition the superior court having jurisdiction over the owner's estate for an order declaring that the testamentary beneficiary is so entitled, the hearing of the petition to be held in accordance with chapter 11.96 RCW.

(3) A testamentary beneficiary claiming a nonprobate asset who has not filed such a petition within the earlier of: (a) Six months from the date of admission of the will to probate; and (b) one year from the date of the owner's death, shall be forever barred from making such a claim or commencing such an action.

(Reviser's note omitted.)

## 2. *The will bequest is not insufficient*

¶44 Manary also contends, based on *Furst*, 113 Wn. App. at 839, that even if the Act entitles Anderson to relief, the will bequest is insufficient because Homer was attempting to revoke the Trust and the Trust is irrevocable as to the property.[13] *Furst* holds that a general residuary gift in a testator's will does not revoke a living trust when a trust requires written notice for revocation. Manary's reliance on *Furst* demonstrates the weakness of his position.

¶45 The primary issue in *Furst* is whether Furst satisfied the common law doctrine of revocation. Under the common law, a trust can be revoked only using the method of revocation specified in the trust instrument. *In re Estate of Button*, 79 Wn.2d 849, 852, 490 P.2d 731 (1971). Here, whether Homer satisfied the common law is irrelevant because Manary's claim is based on the Act.[14]

¶46 A secondary issue in *Furst* is whether Furst followed the procedures set forth in the Act. The *Furst* court notes that a " 'general residuary gift in an owner's will, or a will making general disposition of all of the owner's property, does not entitle the devisees or legatees to receive nonprobate assets of the owner.' " *Furst*, 113 Wn. App. at 843 (quoting RCW 11.11.020(2)). The court's comment

---

[13] Anderson acknowledges that the Trust was irrevocable "as to Eileen's one-half community property interest in the Property." Br. of Appellant at 13. But as discussed above, the Trust is revocable as to *Homer's interest* in the property. The Trust instrument specifically provides that the surviving spouse shall retain "the rights of revocation, amendment, modification or withdrawal" regarding the surviving spouse's interests in the Survivor's Trust. CP at 53-54. Homer therefore retained the right to relinquish *his interest* in the property in favor of Anderson, even after Eileen's death.

[14] Anderson is not entitled to relief under the common law. Under the doctrine of revocation, only the method of revocation specified in a trust instrument can be used to revoke the instrument. *Button*, 79 Wn.2d at 852. The Trust here specified that the Trust could be revoked only by a writing signed by the grantors and delivered to the trustee. CP at 131. While a later will could accomplish this result, it could do so only by expressly revoking the trust. *Furst*, 113 Wn. App. at 843. Because Homer's will does not purport to revoke or even mention the Trust, Homer's bequest does not satisfy the common law.

about a general residuary gift, while accurate, does not apply here because Homer made a specific bequest. The Court of Appeals also notes that Furst did not satisfy the Act because the Act requires "an express revocatory act." *Id.* However, the *Furst* court is incorrect on this point. The Act does not require an "express revocatory act" but a testamentary act. *Id.*

3. *For purposes of the Act, Homer is an owner who could bequeath his interest in the property to Anderson*

¶47 Manary next claims that Homer was not an owner of the property and had no power to dispose of it in his personal capacity because the property was owned by the Trust. But as discussed above, Homer was an owner for the purposes of the Act. RCW 11.11.010(8). Therefore, regardless whether Homer owned the property in his personal capacity, he was statutorily authorized to bequeath the property to Anderson by specifically referring to it in his will.

4. *Homer was not required to comply with the Trust's terms*

¶48 Finally, Manary argues that the Act "does not eliminate the need to substantially follow requirements specifically set forth in the terms of a will substitute." Br. of Resp't at 20. But as noted by the Court of Appeals, "the Act does just that." *Manary*, 164 Wn. App. at 582; *see* Cynthia J. Artura, *Superwill to the Rescue? How Washington's Statute Falls Short of Being a Hero in the Field of Trust and Probate Law*, 74 WASH. L. REV. 799, 807 (1999) ("Rather than requiring the testator to follow the established procedures for changing the terms of a will substitute, the superwill statute permits a testator to make those changes in his will." (footnote omitted)).

C. Anderson Is Not Entitled to Attorney Fees for Answering the Petition for Review

¶49 Anderson seeks "the attorneys' [sic] fees he incurred to respond to Manary's petition" as authorized by RAP 18.1(j) and "pursuant to RCW 11.96A.150."[15] Answer to Pet. for Review at 19. RAP 18.1(j) authorizes a court to award reasonable attorney fees and expenses "[i]f attorney fees and expenses are awarded to the party who prevailed in the Court of Appeals, and if a petition for review to the Supreme Court is subsequently denied." We deny Anderson's request because the Court of Appeals did not award Anderson attorney fees and we did not deny Manary's petition for review.[16]

## VI. CONCLUSION

¶50 We affirm the Court of Appeals. We hold that Homer complied with the Act by specifically referring to the property in his will even without referencing the Trust. This result not only comports with the plain meaning of the Act but also facilitates the power of testators to control the disposition of their nonprobate assets. Anderson is entitled to summary judgment as to Homer's interest in the property,[17] but he is not entitled to attorney fees for answering the petition for review.

MADSEN, C.J.; C. JOHNSON, OWENS, J.M. JOHNSON, and WIGGINS, JJ.; and CHAMBERS, J. PRO TEM., concur.

---

[15] RCW 11.96A.150 permits a court to order reasonable attorney fees at its discretion.

[16] Manary submitted a reply brief to "address the possibility that Anderson is seeking an award of reasonable attorney's fees under RCW 11.96A.150." Reply to Answer on Pet. for Review at 4. But Anderson seeks only "the attorneys' [sic] fees he incurred to respond to Manary's petition," so we need not decide whether Anderson is entitled to reasonable attorney fees under RCW 11.96A.150. Answer to Pet. for Review at 19.

[17] The question remains as to who owns the other one-half interest in the property, but that question is not before us.

¶51 STEPHENS, J. (dissenting) — I disagree that the property at issue here was a nonprobate asset. To me, the issue is plain. The statutory example identified by the majority under former RCW 11.02.005(15) (2007) does not encompass the interest bequeathed to Edwin Anderson. The interest bequeathed to Anderson plainly does fall into one of the categories indentified by the legislature as excluded from the "nonprobate asset" definition under RCW 11.11-010(7)(a)(ii). Because the interest in the property was not a nonprobate asset, it could not pass under chapter 11.11 RCW, the Testamentary Disposition of Nonprobate Assets Act (Act)[18] and the Trust should have controlled the dispensation of the interest in the property. I would reverse the Court of Appeals and reinstate the trial court's order.

¶52 Under the plain language of the statute, as the majority acknowledges, an interest passing under a trust is a nonprobate asset *only* if the trust in question becomes effective or irrevocable upon the grantor's death. Former RCW 11.02.005(15). In other words, the trust under which the interest passes must be revocable during the grantor's lifetime. Here, the Trust was revocable only while *both* Homer and Eileen Green were alive. Clerk's Papers (CP) at 46 (Section 1.06(b)) ("The Grantors declare this Trust to be revocable during their *joint lifetimes*." (emphasis added)). The Trust became irrevocable upon Eileen's death in 1998; at that point Homer should have created a separate Survivor's Trust, which was to consist of funds from his half of the community property and his separate property, and which was to be revocable by him during his lifetime. CP at 52, 53-54 (Article III and Section 4.01). He did not do so. The interest in the property therefore does not fall under the definition of a "nonprobate asset" under former RCW 11.02.005(15).

¶53 The majority argues that the question of revocability is complicated but ultimately irrelevant. It asserts that the

---

[18] The Act is often referred to as the "Superwill" statute.

"Trust permitted Homer to either create a separate Survivor's Trust or to retain his interests in the original Trust, which would then become the Survivor's Trust." Majority at 354. Either way, the majority maintains, "Homer retained the right to revoke his interest in the Survivor's Trust, and Homer's failure to create the Family Trust does not deprive him of this right." *Id.* But the situation is not the same "either way." The provision the majority cites is about the source of funds for the trusts, not the ultimate right to revoke. It is true that for administrative convenience, the Trust allowed Homer to "retain the amount passing to the Survivor's Trust in the trust estate originally established hereunder by the Survivor instead of distributing it to the Survivor's Trust, in which case the remaining balance of the original Trust shall become the 'Survivor's Trust.' " CP at 53 (Section 4.01). In other words, the Trust did not make Homer fund his Survivor's Trust with funds from the original trust but allowed him to elect to fund the Family Trust with original funds. Nonetheless, the terms of the Trust are clear that he had to create two separate trusts in order to retain the right to revoke his interest. CP at 52 (Section 3.02) ("As soon as practicable after the death of the first . . . Trustee . . . the [surviving] Trustee *shall* divide the Trust in two." (emphasis added)). The majority treats his failure to do this as the equivalent of having done so.

¶54 The majority notes that a term of the Trust indicated that it was to become revocable only " '[u]pon the death or incapacity of both of the Trustors.' " Majority at 354 (emphasis omitted) (alteration in original) (quoting CP at 47 (Section 1.06(f))). But under the majority's reading, Section 1.06(f) conflicts with the instruction in Section 1.06(b) that the Trust was revocable during Homer and Eileen's joint lifetimes. In contrast, under a proper reading—that Homer retained the right to revoke his interest only if he created two trusts following Eileen death—the terms do not conflict. Section 1.06(f) operated only if Homer and Eileen died together or if Homer died after creating a

separate, revocable Survivor's Trust. This is the plain import of the trust language.

¶55 However, even if the Trust were revocable during Homer's lifetime and could thus be characterized as a nonprobate asset, the legislature specifically exempted this type of interest passing under trust from the definition of "nonprobate asset." RCW 11.11.010(7)(a)(ii) removes from the definition of "nonprobate asset" a "deed or conveyance for which possession has been postponed until the death of the owner." Here, the Trust's terms postponed possession of the property—i.e., the conveyance—until "the death of the surviving Trustor, [upon which] the Trustee shall apply and distribute the net income and principal" of the Trust. CP at 60 (Section 6.03).[19] The Trust retained the title until that moment, granting only a life estate to Homer, who was merely a beneficial owner of the property and also acted as Trustee. The property falls squarely under the statute's exception.

¶56 The majority asserts that RCW 11.11.010(7)(a) does not exclude all real estate interests, but only those that are joint tenancies and future interests and concludes that because Homer's interest in the property is not a joint tenancy or future interest, RCW 11.11.010(7)(a) does not apply. Majority at 355. But the exclusion found in RCW 11.11.010(7)(a)(ii) is clearly not concerned with whether the *owner* has a future interest given that it operates only after the owner's death. The exclusion is concerned with whether the beneficiary of the testamentary disposition takes possession of the deed or conveyance at the time of the owner's death—a future interest. Here, Anderson was bequeathed a conveyance that was postponed until the death of Homer. Anderson's interest in the property was not a nonprobate asset.

---

[19] This provision was later amended to change the beneficiary of the Trust, but the modification did not disturb the postponement of the benefit until the death of the surviving trustor. *See* CP at 192.

¶57 The majority's reading undermines the purpose of the Superwill statute. The legislature intended chapter 11.11 RCW to be read narrowly and applied only to certain limited nonprobate assets. Cynthia J. Artura, *Superwill to the Rescue? How Washington's Statute Falls Short of Being a Hero in the Field of Trust and Probate Law*, 74 WASH. L. REV. 799, 812 (1999); *see* FINAL B. REP. on Substitute S.B. 6181, 55th Leg., Reg. Sess., at 1 (Wash. 1998). From the exemptions to the nonprobate assets the legislature identified in RCW 11.11.010(7)(a), it appears the legislature was especially concerned about the treatment of real property. The reason the legislature might be cautious about categorizing an interest in real property as a nonprobate asset becomes clear when one considers the importance of certainty in recorded land titles. Here, Homer tried to remove the property from the Trust and bequeath it to Anderson. This attempted conveyance creates the very title record issues that the legislature tried to avoid in creating the "Superwill statute." Artura, *supra*, at 813 ("The statute does not apply to real estate property joint tenancies or to future interest deeds *due to the drafter's concerns regarding real estate records*. The drafters explain that the statute also excludes property interests passing under community property agreements because transfers under community property agreements supersede any disposition by will or will substitute." (emphasis added) (footnote omitted)). When they recorded their conveyance by quitclaim deed of the property to the Trust, the Greenes provided notice to all—including Anderson—of the Trust's interest in the property. Allowing Homer to subsequently transfer the property by will, especially when the putative transfer does not even mention the Trust, would undermine the stability of real estate title records. Thus, I conclude that the majority's ruling frustrates the purpose of the Act and conflicts with the legislature's intent.

¶58 The trial court correctly determined that the property at issue remains subject to the trust created by Homer

and Eileen Greene during their joint lifetimes. It was not subject to a later bequest by Homer under the Superwill statute. I would reverse the Court of Appeals and reinstate the trial court's order. Accordingly, I respectfully dissent.

GONZÁLEZ, J., concurs with STEPHENS, J.