FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 56

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SEVEN SALES LLC as assignee HERITAGE REHAB LLC,<br><br>                   Appellants,<br><br>   v.<br><br>BEATRICE OTTERBEIN; PIERCE COUNTY, WASHINGTON,<br><br>                  Respondents. | No. 46208-7-II<br><br><br><br>PUBLISHED OPINION |

JOHANSON, C.J. — Seven Sales LLC appeals the trial court's order quashing its writ of garnishment and discharging Pierce County (County) as garnishee. Seven Sales is the assignee of a judgment against Beatrice Otterbein. The County foreclosed on property that Otterbein owned to satisfy a sewer tax lien, which resulted in the County holding surplus funds. Seven Sales argues that, as Otterbein's creditor, it should be able to "apply" to the county treasurer for the surplus funds on Otterbein's behalf or, in the alternative, the surplus funds are subject to a writ of garnishment.

We hold that under RCW 84.64.080, the statute that governs the sewer tax lien foreclosure process, only the property's record title holder may apply to the County for any surplus funds and the surplus funds after foreclosure are not subject to garnishment. We affirm the trial court's order quashing Seven Sales' writ of garnishment.

FACTS

In June 2012, Heritage Rehab LLC obtained a money judgment against Beatrice Otterbein for $8,860.63.[1] In May 2013, Heritage assigned its judgment to Seven Sales.

In August 2012, the County filed certificates of delinquency as notice that Otterbein was delinquent in paying "sewer service fees." Clerk's Papers (CP) at 96. Otterbein was the record title holder of the property on the date the County filed its certificates of delinquency. In April 2013, the County held a foreclosure sale of Otterbein's real property to satisfy the sewer liens, which resulted in a $34,323.54 surplus.[2] Under the sewer tax lien foreclosure statute, the County informed Otterbein that she could claim the surplus funds within three years by filing an application. Although post office tracking records suggest that Otterbein received the County's notice, she did not apply to claim the surplus.

In November 2013, Seven Sales obtained a writ of garnishment, naming the County as the garnishee and attempting to satisfy its judgment against Otterbein from the surplus foreclosure funds. The County answered the writ, arguing that

> the foreclosure sale surplus money is being held in trust by the County at this time. Since [Otterbein] is the only person entitled to those proceeds at this time and she has not yet applied for them, [Seven Sales] is not entitled to garnish the excess proceeds from the foreclosure sale.

---

[1] Because Seven Sales does not assign error to any of the trial court's findings of fact, they are verities on appeal and establish the facts of this case. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

[2] Liens for unpaid water or sewer connection charges and usage fees are foreclosed using the same procedure outlined in RCW 84.64.080 that the County uses to foreclose on property tax liens. RCW 36.94.150.

CP at 46. Seven Sales controverted the County's answer, arguing that the "application" that RCW 84.64.080 requires is merely a way to determine where to send the surplus funds, that the statute applies primarily to holders of an interest in the foreclosed property and not judgment creditors, and that garnishing money that the County holds for Otterbein is not practically very different from garnishing Otterbein's bank account.[3]

After a hearing, the trial court concluded that the surplus is not "reachable through garnishment" after a foreclosure under RCW 84.64.080. Report of Proceedings at 21. The trial court denied Seven Sales' motion to controvert the County's answer to the writ of garnishment and discharged the County as garnishee. Seven Sales appeals the trial court's order discharging the County as garnishee.

## ANALYSIS

Seven Sales argues that (1) it should be allowed to apply for the surplus funds on Otterbein's behalf, and (2) the surplus funds are subject to garnishment.[4] We disagree.

### I. STANDARD OF REVIEW AND RULES OF LAW

Seven Sales does not challenge the trial court's findings of fact, therefore they are verities on appeal. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231

---

[3] The County's application form requires the applicant to identify him or herself as the record title holder and inform the County where to send the money. The form must be notarized.

[4] Seven Sales also argues that the application process after a tax foreclosure sale is "not authorized by law" because it requires Otterbein to apply for the surplus before she can claim an ownership interest in the surplus funds. Br. of Appellant at 3. This argument fails because neither party argued nor did the trial court conclude that the application is what establishes Otterbein's ownership interest in the surplus. The trial court, in fact, concluded that Otterbein is entitled to the surplus and that the County is holding it. The application is merely the statutory procedure by which Otterbein receives the surplus; it has no impact on her ownership interest in the surplus.

(2013). We review de novo whether the trial court's findings of fact support its conclusions of law. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014).

We review the trial court's interpretation of a statute's meaning de novo. *Manary v. Anderson*, 176 Wn.2d 342, 350, 292 P.3d 96 (2013). Our primary purpose in statutory interpretation is to ascertain and carry out legislative intent. *Manary*, 176 Wn.2d at 350-51 (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

We begin statutory interpretation by analyzing the statute's plain meaning. *Manary*, 176 Wn.2d at 352. Where the statute's meaning is "plain on its face," we give effect to that plain meaning and presume it is the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. Plain meaning can be determined "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. "It is fundamental that in construing any statute we avoid absurd results." *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

Where a statute is ambiguous, we consider legislative history and principles of statutory construction to discern legislative intent. *Stephenson v. Pleger*, 150 Wn. App. 658, 662, 208 P.3d 583 (2009) (citing *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242-43, 88 P.3d 375 (2004)). Statutory language is ambiguous when it is "susceptible to more than one reasonable interpretation." *Stephenson*, 150 Wn. App. at 662.

The sewer tax lien foreclosure statute provides, in part, that

[i]f the highest amount bid for any such separate unit tract or lot is in excess of the minimum bid due upon the whole property included in the certificate of delinquency, *the excess shall be refunded* following payment of all recorded water-sewer district liens, *on application therefor, to the record owner of the property.* The record owner of the property is the person who held title on the date of issuance of the certificate of delinquency. *Assignments of interests, deeds, or other*

4

> *documents executed or recorded after filing the certificate of delinquency shall not affect the payment of excess funds to the record owner.* In the event no claim for the excess is received by the county treasurer within three years after the date of the sale he or she shall at expiration of the three year period deposit such excess in the current expense fund of the county which shall extinguish all claims by any owner to the excess funds.

RCW 84.64.080 (emphasis added).

## II. ONLY THE RECORD TITLE HOLDER MAY APPLY FOR SURPLUS TAX FORECLOSURE FUNDS

Seven Sales argues that the trial court erred when it concluded that only the record title holder may apply to receive the surplus funds after a tax foreclosure sale. We hold that RCW 84.64.080 permits only the record title holder to apply for the surplus funds.

The sewer tax lien foreclosure statute provides that the record title holder is the only possible recipient of the surplus sewer tax lien foreclosure funds and that the record title holder shall receive the surplus funds upon application for them. RCW 84.64.080 states that the excess funds "*shall be refunded* following payment of all recorded water-sewer district liens, *on application therefor, to the record owner of the property.* The record owner of the property is the person who held title on the date of issuance of the certificate of delinquency." (Emphasis added.) Although the statute does not explicitly state that the surplus shall be refunded to the record title holder "on *his or her* application therefor," this is the only reasonable reading of the sewer tax lien foreclosure statute.

Seven Sales argues that "anyone" can apply for the surplus funds on the record title holder's behalf. Specifically, Seven Sales claims that it can apply to have the surplus funds deposited in the court registry, permitting its garnishment action. But it is unreasonable to interpret the statute to allow a third party such as a creditor to apply for the surplus funds and to have said funds deposited into the court registry subject to garnishment when the statute's language provides that

the funds shall be refunded only "to the record owner." RCW 84.64.080. Where, as here, the statute provides that only the record owner may receive the surplus funds, it is not reasonable to permit "anyone" to apply for those funds, as Seven Sales argues. Here, the application form that the County used required the applicant to state that she "had a recorded, ownership interest in the real property" and the form must be notarized. CP at 31. This application process allows the county treasurer to confirm that the person applying to receive the surplus funds actually *is* the record title holder and the person entitled to receive the funds as required by the statute. This confirmation could not be accomplished if "anyone," such as a creditor like Seven Sales, could apply for the surplus on the record title holder's behalf. Accordingly, we hold that RCW 84.64.080 permits only the record title holder to apply to receive the surplus funds.

### III. THE SURPLUS FUNDS ARE NOT SUBJECT TO GARNISHMENT

Seven Sales next argues that the surplus funds from a sewer tax lien foreclosure sale are subject to garnishment under ch. 6.27 RCW, the general garnishment statute. Because RCW 84.64.080 precludes garnishment of such surplus funds, we disagree.

### A. APPLICABLE STATUTES

Generally, Washington law permits garnishment of a judgment debtor's property if the judgment creditor "files a writ of garnishment on a party who is indebted to the [judgment] debtor at the time of service [of the writ]." *Weyerhaeuser Co. v. Calloway Ross, Inc.*, 133 Wn. App. 621, 624, 137 P.3d 879 (2006) (citing RCW 6.27.250(1)(a)). If the garnishee is "indebted" to or "has possession or control of personal property or effects belonging to the defendant," the garnishee must hold the defendant's property pursuant to a writ of garnishment. RCW 6.27.060, .100. Washington law recognizes that "the garnishment process is necessary for the enforcement of

6

obligations debtors otherwise fail to honor, and that garnishment procedures benefit the state and the business community as creditors." RCW 6.27.005.

However, the garnishment statute appears to conflict with the sewer tax lien foreclosure statute. As noted above, RCW 84.64.080 provides that surplus sewer tax lien foreclosure funds "shall be refunded following payment of all recorded water-sewer district liens, on application therefor, to the record owner of the property." Further, in 2003, the sewer tax lien foreclosure statute was amended to include the following sentence:

> Assignments of interests, deeds, or other documents executed or recorded after filing the certificate of delinquency shall not affect the payment of excess funds to the record owner.

LAWS OF 2003, ch. 23, § 5; RCW 84.64.080. The purpose of the 2003 amendment was to "ease the job of the county treasurer because the statute had previously been 'ambiguous as to whether other creditors have rights to intervene and receive the refund before it goes to the record owner.'" *Stephenson*, 150 Wn. App. at 663 (quoting S.B. REP. ON ENGROSSED SUBSTITUTE H.B. 1564, 58th Leg., Reg. Sess. (Wash. 2003)).

When considering two statutes that address the same subject, one method of interpretation is to determine whether one statute is "general" and the other is "specific." "It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act and thus conflict with it, the special act will be considered as an exception to, or qualification of, the general statute." *Wark v. Wash. Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d 844 (1976). Although we must try to consider statutes "related to the same subject together" where possible, if statutes conflict "irreconcilably," the more specific statute prevails. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146-47, 18 P.3d 540 (2001).

## B. Resolving Statutory Conflict

Seven Sales argues that the tax foreclosure statute does not conflict with garnishment law and the two statutes can be applied together.[5] The County argues, and we agree, that the tax foreclosure statute, including the 2003 amendment, is a specific statute that plainly precludes judgment creditors from directly receiving the surplus funds after a foreclosure sale.

Garnishment law directs garnishees regarding what to do if they hold property that belongs to a judgment debtor. *See* ch. 6.27 RCW. The sewer tax lien foreclosure statute is a more specific law because it directs the county treasurer regarding what to do specifically with a surplus after a sewer tax lien foreclosure sale. Therefore, we examine whether the tax foreclosure statute conflicts with general garnishment law.

Two provisions of RCW 84.64.080 support the County's argument that the statutes conflict and the tax foreclosure statute should control. First, RCW 84.64.080 provides that "the [surplus] shall be refunded following payment of all recorded water-sewer district liens, on application therefor, to the record owner of the property." This provision conflicts with general garnishment law, which provides that Otterbein's surplus funds held by the County would be subject to garnishment by a creditor and, thus, would not be refunded directly to the record owner of the property.

Second, the 2003 amendment provides that "[a]ssignments of interests" executed after the certificates of delinquency are issued "shall not affect the payment of excess funds *to the record*

---

[5] Seven Sales also argues that the "exemptions" from garnishment, e.g., the earnings that the garnishment defendant can hold exempt pursuant to RCW 6.27.150, are irrelevant to this appeal. This argument misunderstands the County's position. The County argues not that the surplus funds generated by a tax foreclosure sale are "exempt" from garnishment but that the sewer tax lien foreclosure law itself provides that garnishment law does not apply to the surplus funds.

8

*owner.*" LAWS OF 2003, ch. 23, § 5 (emphasis added); RCW 84.64.80. But garnishment law would permit such a creditor's interest to affect the payment of surplus funds to the record owner. *Weyerhaeuser*, 133 Wn. App. at 624 (citing RCW 6.27.250(1)(a)).

The plain language of the specific sewer tax lien foreclosure statute and general garnishment law conflict and therefore the specific foreclosure statute must control. Under the plain language of RCW 84.64.080, Seven Sales is not entitled to garnish the surplus funds because (1) those funds are payable only to the record title owner, and (2) although Seven Sales received an interest in the funds by assignment, the statute states that said assignment will not affect the payment of the surplus to Otterbein, the record title owner.

To the extent that RCW 84.64.080 is ambiguous, the legislative history of the 2003 amendments to RCW 84.64.080 bolsters our analysis. Examining the same legislative history as this court considered in *Stephenson*, the purpose of the 2003 amendment is clear. The legislature found that the previous version of the statute was "ambiguous as to whether other creditors have rights to intervene and receive the refund before it goes to the record owner." S.B. REP. ON ENGROSSED SUBSTITUTE H.B. 1564, 58th Leg., Reg. Sess. (Wash. 2003). Therefore, the 2003 amendment was enacted to eliminate this ambiguity and states that "[a]ssignments of interests . . . executed or recorded after filing the certificate of delinquency shall not affect the payment of excess funds to the record owner." LAWS OF 2003, ch. 23, § 5; RCW 84.64.080.

Reading the 2003 amendment together with its legislative history, Seven Sales is precluded from using garnishment law to "affect the payment of excess funds" to Otterbein, the record title holder. Legislative history demonstrates that creditors such as Seven Sales are not permitted to use garnishment as a method to intervene to prevent the record title holder from receiving the

9

No. 46208-7-II

surplus funds after a tax foreclosure sale. Accordingly, we hold that surplus funds following a

sewer tax lien foreclosure sale are payable only to the record title holder of the foreclosed property

and said surplus is not subject to garnishment by a creditor.

We affirm the trial court's order quashing Seven Sales' writ of garnishment.

JOHANSON, C.J.

We concur:

BJORGEN, J.

SUTTON, J.

10