[No. 1412-2. Division Two. June 24, 1975.]

LLOYD EDMONDS et al, Appellants, v. MARGARET JANE ASHE, Individually and as Administratrix, Respondent.

J. A. *Vander Stoep* and *Rene J. Remund* (of *Murray, Armstrong & Vander Stoep*), for appellants.

J. D. *Searle* and *Richard Lynn Brosey* (of *Searle & Brosey*), for respondent.

PEARSON, J.—Plaintiff Lloyd Edmonds appeals from a summary judgment entered in favor of the defendant, Margaret Jane Ashe, individually and as administratrix of the estate of Samuel Ashe, her deceased husband.

A tragic sequence of events precipitated this action. Because of her husband's drinking problem, Margaret Jane Ashe left him after nearly 20 years of marriage and filed for divorce. She subsequently obtained an order restraining her husband from visiting her when he was intoxicated. Sam Ashe was apparently intent on effecting a reconciliation. On the evening of November 28, 1972, Ashe went to his wife's apartment, but she was not at home. While there, he discharged a pistol and the manager ordered him to leave. He thereupon went to the home of Lloyd and Patricia Edmonds, who were close friends of the Ashes. He arrived armed with a rifle and a revolver. He was given some coffee and was observed putting whiskey into it. Ashe informed the Edmondses that he was on a mission to get his family back and he asked for their assistance. Ashe made a number of telephone calls to his wife and eventually announced that he was going to hold the Edmondses hostage in exchange for Mrs. Ashe and her parents. A number of law enforcement officers arrived at the Edmondses' home. Ashe spoke on the telephone to the sheriff, and after hanging up, he pointed the rifle at Lloyd Edmonds and pulled the trigger. The gun did not discharge and Edmonds

grabbed for the rifle. During the ensuing scuffle, Edmonds was shot several times with the revolver. Ashe was then shot and killed by someone from outside the house.

Plaintiff Edmonds filed a claim against the estate of Sam Ashe for injuries from multiple gunshot wounds. The claim was rejected and this action was commenced. Sam Ashe left no separate property; all of the estate property was community in character. The trial court held that the community could not be held liable for the wrongful act committed by Ashe, and dismissed the action.

We agree with the trial court's ruling that a community obligation was not created by this tort. However, we are of the opinion that any judgment obtained by Edmonds may be satisfied out of Sam Ashe's one-half interest in the community estate.

There are numerous decisions in Washington holding that the marital community will be held liable for a tort committed by a spouse if that spouse was either (1) managing the community property, or (2) acting for the benefit of the community. *See, e.g., Kilcup v. McManus*, 64 Wn.2d 771, 394 P.2d 375 (1964); *LaFramboise v. Schmidt*, 42 Wn.2d 198, 254 P.2d 485 (1953); *Milne v. Kane*, 64 Wash. 254, 116 P. 659 (1911). *See generally* H. Pruzan, *Community Property and Tort Liability in Washington*, 23 Wash. L. Rev. 259 (1948).

Plaintiff argues that his injury occurred while Sam Ashe was acting for the community benefit; that is, Ashe was attempting to benefit the community by salvaging the marriage. We do not agree with this argument.

It is true there are several cases from this jurisdiction holding the community liable even though the connection between the supposed community benefit or acts of management and the wrong committed was exceedingly tenuous. *E.g., Blais v. Phillips*, 7 Wn. App. 815, 502 P.2d 1245 (1972) (community held liable for assault which took place after and as result of a court action involving the management of community property); *Benson v. Bush*, 3 Wn. App. 777, 477 P.2d 929 (1970) (holding the community liable

when husband broke up a dog fight on the community front porch, involving his and a neighbor's dog, and the husband then attacked the neighbor); *LaFramboise v. Schmidt, supra,* (community held liable for husband's indecent liberties taken with a foster child for whom the family had been paid to care); *McHenry v. Short,* 29 Wn.2d 263, 186 P.2d 900 (1947) (holding the community liable for husband's fatal beating of plaintiff's intestate, because the incident occurred either as part of an attempted eviction from community real estate or while the husband was working at his $3 per month job as caretaker of a boathouse).

It should be noted that the decisions which have imposed community liability on the benefit theory could have been also predicated on the management theory.[1] *See* H. Pruzan, *Community Property and Tort Liability in Washington, supra* at 263 and cases cited at footnote 21; *West v. Stanfield,* 48 Wn.2d 55, 290 P.2d 704 (1955); *Jacobson v. Lawrence,* 9 Wn. App. 786, 514 P.2d 1396 (1973).

 Plaintiff concedes that this is not a management theory case. And we cannot hold that Ashe was acting in a way designed to benefit the community. First of all, the tort which is the subject of this lawsuit, *i.e.,* the *actual shooting* of the plaintiff, had no relationship at all to any supposed community benefit, either in terms of Ashe's immediate purpose, which was to talk to his wife in person, or his broader purpose, which was to reconcile with his wife. Secondly, we do not believe that acts of wrongdoing which give rise to community liability on the benefit theory should include those which, from the perspective of a reasonable person, are unlikely to produce the desired conse-

---

[1]The family car doctrine cases should be separately considered. Although they speak of community benefit derived from legitimate recreational pursuits, liability derives from an agency relationship in which the community serves as principal. *See Moffitt v. Krueger,* 11 Wn.2d 658, 120 P.2d 512 (1941); *King v. Williams,* 188 Wash. 350, 62 P.2d 710 (1936). The family car doctrine is analogous to the management theory of community liability insofar as both are based on agency principles. H. Pruzan, *Community Property and Tort Liability in Washington,* 23 Wash. L. Rev. 259, 266-67 (1948).

quences. Whatever Ashe's thinking might have been, it can hardly be said the act of holding plaintiff hostage (much less shooting the plaintiff) could result in the resolution of the Ashes' marital difficulties. Hence, we conclude that the tort committed by Ashe did not give rise to a community obligation.

Plaintiff alternatively argues that even if Sam Ashe's action did not give rise to a community obligation, his share of the community property should be liable for any judgment entered against him separately. In support of his argument, plaintiff quotes Professor Harry M. Cross, *The Community Property Law in Washington*, 49 Wash. L. Rev. 729, 842 (1973):

> The immunity of community property to separate obligations disappears at the death of a spouse, permitting separate obligations of the decedent or surviving spouse to be enforced against their respective shares of the former community property.

(Footnote omitted.) In rebuttal, defendant contends that this rule applies to contract debts only and does not apply to claims sounding in tort. She points out that at common law, the tort claim would not survive the death of the tort-feasor, and argues that this rule has been modified only to a limited extent by Washington's survival of actions statute, RCW 4.20.046, which states, in part:

> All causes of action by a person or persons against another person or persons shall survive . . . against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: *Provided, however,* . . . The liability of property of a husband and wife held by them as community property to execution in satisfaction of a claim enforceable against such property so held shall not be affected by the death of either or both spouses; . . .

The thrust of defendant's argument is that this statute, being in derogation of the common law, should be strictly construed, and that because of the proviso only tort claims

enforceable against the community as a whole may be satisfied out of the community property after the death of a spouse.

█ The cases which support Professor Cross' statement have not involved tort obligations. *See In re Estate of Schoenfeld,* 56 Wn.2d 197, 351 P.2d 935 (1960); *In re Estate of McHugh,* 165 Wash. 123, 4 P.2d 834 (1931); *Crawford v. Morris,* 92 Wash. 288, 158 P. 957 (1916); *In re Estate of Hill,* 6 Wash. 285, 33 P. 585 (1893); *Columbia Nat'l Bank v. Embree,* 2 Wash. 331, 26 P. 257 (1891). But to immunize the decedent's share of what once was community property from his or her separate tort obligations would run counter to basic community property principles, which, of course, are not based upon the common law. Upon the death of a spouse the community entity is dissolved and the community character of property owned by the spouses ceases to exist. *In re Estate of McHugh, supra.* W. deFuniak and M. Vaughn, *Principles of Community Property* § 212 (2d ed. 1971); H. Cross, *The Community Property Law in Washington, supra* at 841. The property, in reality, becomes "plainly separate." *Crawford v. Morris, supra* at 289. References to community property existing after the death of a spouse are made merely as an aid to administration.[2]

█ We believe that the legislature did not intend to totally immunize all of that which once was community property from the separate tort obligations of a deceased spouse by the enactment of the proviso in RCW 4.20.046. It was undoubtedly inserted to prevent a surviving spouse from claiming that because the community no longer exists, his or her one-half interest in the community property is wholly immune from an admitted community tort obligation. *See* 36 Wash. L. Rev. 331 (1961).

█ Defendant also contends that plaintiff's second ar-

---

[2]Before claims against the decedent separately may be satisfied out of his share of that which was community property, all community obligations must have been paid. *In re Estate of Schoenfeld,* 56 Wn.2d 197, 351 P.2d 935 (1960); *Columbia Nat'l Bank v. Embree,* 2 Wash. 331, 26 P. 257 (1891); W. deFuniak and M. Vaughn, *Principles of Community Property* § 212 (2d ed. 1971).

gument on appeal should not be considered by this court because it was not expressly argued or passed upon by the trial court. Ordinarily legal theories not presented to the trial court will not be considered on appeal. *Matthias v. Lehn & Fink Prods. Corp.*, 70 Wn.2d 541, 424 P.2d 284 (1967). This rule is not, however, applicable in certain instances, including the situation when the question raised concerns the right to maintain the action. *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970); *Holzer v. Rhodes*, 24 Wn.2d 184, 163 P.2d 811, 172 A.L.R. 1173 (1945); *Puget Sound Marina, Inc. v. Jorgensen*, 3 Wn. App. 476, 475 P.2d 919 (1970). The question raised in plaintiff's second assignment of error does affect his right to maintain an action against the community estate of Sam Ashe, and hence may be considered on appeal. Additionally, the record is not clear as to what arguments were presented to the court or the legal basis for its ruling; therefore, we do not believe that we may justifiably refuse to consider this issue.

■ Plaintiff lastly argues that his own motion for summary judgment should have been granted. We do not agree. Plaintiff charges Sam Ashe with the commission of an intentional tort only.[3] After reviewing the record, we believe that it is within the realm of possibility that Sam Ashe's act of shooting the plaintiff was not intentional. A material question of fact has therefore been raised.

In view of our conclusion that any separate tort obligation incurred by Sam Ashe may be satisfied out of his one-half interest in the community estate, we reverse the judgment of the trial court and remand for a trial on the issue of the liability of Sam Ashe.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied August 13, 1975.

Review denied by Supreme Court October 21, 1975.

---

[3]Sam Ashe was insured for torts arising from his own negligence, but not for intentional wrongs. Ashe's insurer has agreed to a settlement of the plaintiff's claim if his action for the intentional tort is unsuccessful.