[No. 51789-4. En Banc. March 27, 1986.]

*In the Matter of the Estate of*
E. J. MELL.

ARTHUR J. MELL, *Petitioner*, v. JOHN H. PAGE, ET AL, *Respondents.*

*Fristoe, Taylor & Schultz, Ltd., P.S.,* by *E. Robert Fristoe* and *Don W. Taylor* and *Short & Cressman,* by *Paul R. Cressman, Sr., James A. Oliver,* and *Lynn M. Skordal,* for petitioner.

*Bean, Gentry & Rathbone,* by *Stephen J. Bean* and *Buzzard, Glenn & Henderson, P.S.,* by *Jerome L. Buzzard* and *Mark E. Allen,* for respondents.

DORE, J.—This case involves the construction of a will which distributes E. J. Mell's estate. The trial court found the will unambiguous and distributed the entire estate to the decedent's son, Arthur J. Mell. The Court of Appeals reversed, holding that the testator intended for the residuary legatees to receive a portion of the property. *In re Estate of Mell,* 40 Wn. App. 359, 698 P.2d 1080 (1985). We reverse and reinstate the judgment of the trial court.

## FACTS

The facts are undisputed. On December 12, 1970, E. J. Mell and his wife, Mary Mell, executed separate wills. Mary Mell had two children from a prior marriage: John H. Page and Lois Meyer. E. J. Mell had one son from a prior marriage: Arthur J. Mell. Mary Mell died on October 31, 1971. After her death, E. J. Mell neither remarried nor executed a new will. E. J. Mell died 11 years later on January 9,

1982, leaving 4 grandchildren and 10 stepgrandchildren, as well as his son, Arthur J. Mell.

E. J. Mell's will states in relevant part:

SECOND: I declare that I am married, that my wife is MARY A. MELL, and that my wife and I have no children but that I have one son by a previous marriage, namely, ARTHUR J. MELL, who is of legal age. I declare that I have no children of any deceased child of mine. *Prior to my marriage to my present wife I had acquired separate property, and since our marriage my said wife and I have acquired community property. I intend by this will to dispose of my separate property and of my one–half of the community property owned by myself and my said wife.*

THIRD: I will, devise and bequeath to my son, ARTHUR J. MELL, *all of the separate property owned by me at the time of my death,* both real and personal, and wherever situate, absolutely to do with and dispose of as he may deem fit.

FOURTH: All of the rest, residue and remainder of the estate of which I die seized and possessed, both real and personal, and wherever situate, I will, devise and bequeath to the then living children of my son, ARTHUR J. MELL; of my stepson, JOHN H. PAGE; and of my stepdaughter, LOIS MEYER, share and share alike.

(Italics ours.)

Arthur J. Mell, as executor, sought an order determining rights under the will and declaring the status of the property. The residuary legatees intervened.

During trial, the stepgrandchildren were allowed to introduce extrinsic evidence of E. J. Mell's testamentary intent. The trial court admitted but did not consider this extrinsic evidence because, in its opinion, the will was not ambiguous. The trial court concluded that all of E. J. Mell's property at the time of his death was "separate" and should therefore go in its entirety to Arthur, and that none be distributed to the residuary legatees.

The Court of Appeals reversed and held that "separate property" referred only to the property that E. J. Mell had acquired before marriage. The former community property became "individually owned" property upon dissolution of

the community. Arthur Mell was entitled to a distribution of that property which E. J. Mell had acquired prior to his marriage. The remainder of the estate would pass through the residuary clause to the grandchildren and stepgrandchildren.

### CHARACTERIZATION OF PROPERTY UPON DISSOLUTION OF MARITAL COMMUNITY

Petitioner Arthur Mell contends that when Mary Mell died the community dissolved and E. J. Mell's one–half share of community property became his "separate property" as a matter of law. Accordingly, he asserts that under the clear and unambiguous language of the will he is entitled to the entire estate.

> THIRD: I will, devise and bequeath to my son, ARTHUR J. MELL, *all of the separate property owned by me at the time of my death,* both real and personal, and wherever situate, absolutely to do with and dispose of as he may deem fit.

The Court of Appeals disagreed, concluding that E. J. Mell's choice of "separate" and "community" property labels for the distribution scheme in his will created an ambiguity. The Court of Appeals reasoned that, when the marital community dissolves upon the death of a spouse, the former community property becomes "individually owned" property. Thus, neither "separate" nor "community" property existed at the death of the testator. The court held that the testator's specific bequest of "separate property" referred to that property he had acquired prior to his marriage. Consequently, his former community property and accumulations subsequent to his wife's death would be distributed to the residuary legatees.

 The court relied primarily on a divorce case to support its analysis:

> Where no disposition of the property rights of the parties is made by the divorce court, the separate property of the husband prior to the divorce becomes his individual property after divorce, the separate property of the wife becomes her individual property,

and from the necessities of the case, their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property.

(Italics omitted.) *In re Estate of Mell,* 40 Wn. App. at 364 (quoting *James v. James,* 51 Wash. 60, 62, 97 P. 1113, 98 P. 1115 (1908)).

This analysis is problematic. First, in the process of reaching its result, the Court of Appeals has seemingly created a new class of property: "individual property." Second, the Court of Appeals reliance on a divorce case to classify E. J. Mell's one–half interest in the community property as individual rather than separate property seems strained. In *James,* the court specifically noted that the property only becomes individual "'[w]here no disposition of the property rights of the parties is made by the divorce court . . .'" *James,* at 62. The point emphasized by the court was that community property becomes common property if no other disposition is made in the divorce decree. Here, by contrast, the testator disposed of all of his property by will; there was no undisposed of property to be classified or partitioned in some fashion.

Finally, although the Court of Appeals correctly noted that "'[r]eferences to community property existing after the death of a spouse are made merely as an aid to administration", *Mell,* at 364 (quoting *Edmonds v. Ashe,* 13 Wn. App. 690, 695, 537 P.2d 812 (1975)), this statement is not particularly relevant here. The *Edmonds* court was discussing whether a deceased spouse's former half interest in community property could still be liable for the separate tort obligations of the deceased. The court was thus concerned with the legal definitions of each type of property or debt. In this case, the references to community and separate property were made by a testator as descriptive of the nature of his property. Thus, E. J. Mell appears to have divided his property into "separate" and "community" for dispositive, rather than administrative, purposes. The Court of Appeals reliance upon *Edmonds* is questionable.

The Court of Appeals decision also fails to recognize that courts and commentators often use the term "separate property" to mean both property obtained before or during marriage which is owned by only one spouse, and property which remains or becomes owned by only one spouse after dissolution of the marriage or death of one of the marriage partners. For instance courts often hold that when a marital community dissolves, the one–half share of community property of a former spouse becomes that spouse's "separate property":

> At death, the community is dissolved and the former community property becomes the separate property of the decedent's estate and of the surviving spouse.

*deNoskoff v. Scott,* 36 Wn. App. 424, 426–27, 674 P.2d 687 (1984). *See also Edmonds v. Ashe,* 13 Wn. App. 690, 537 P.2d 812 (1975) (citing *Crawford v. Morris,* 92 Wash. 288, 158 P. 957 (1916)); Washington State Bar Ass'n, *Community Property Deskbook* § 40.2 (1977). Applying this definition to E. J. Mell's will transforms the entire estate into "separate property".

By the third paragraph of his will, the testator made a specific devise and bequest to his son of "all of the separate property owned by me at the time of my death". Upon the death of Mrs. Mell, the property which Mr. Mell and his deceased wife had formerly owned as community property ceased to be such and became the separate property of E. J. Mell and the successors of Mary A. Mell. The one–half share of community property described by the testator in the second clause of his will thus became his separate property, owned by the testator at the time of his death.

## QUESTION OF AMBIGUITY

In an attempt to retain the favorable decision of the Court of Appeals, the residuary legatees contend that an examination of the entirety of the will indicates that the testator appears to have divided his property into two classifications, "separate" and "community," for disposition purposes, and that he contemplated a distribution of the

"community" property to the residuary legatees. These beneficiaries argue that an ambiguity exists where the testator defined his separate property as that acquired prior to marriage and then devised by specific bequest "all of the separate property owned by me at the time of my death . . ." The residuary legatees contend that extrinsic evidence would establish that the testator intended the specific bequest to devise only the separate property acquired prior to his marriage that he retained at the time of his death and that the residuary clause would devise his marital property.

The primary duty of a court called upon to interpret a will is to ascertain the intent of the testator. *In re Estate of Bergau,* 103 Wn.2d 431, 435, 693 P.2d 703 (1985); *In re Estate of Riemcke,* 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). Although a will speaks at the time of death, the testator's intentions, as viewed through the surrounding circumstances and language, are determined as of the time of the execution of the will. *In re Estate of Bergau,* at 436; *In re Estate of Robinson,* 46 Wn.2d 298, 280 P.2d 676 (1955). The testator is presumed to have known the law at the time of execution of his will. *In re Estate of Patton,* 6 Wn. App. 464, 471, 494 P.2d 238 (1972). The intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety. *In re Estate of Bergau,* at 435; *In re Estate of Douglas,* 65 Wn.2d 495, 499, 398 P.2d 7 (1965). When, after reading the will in its entirety, any uncertainty arises about the testator's intent, extrinsic evidence, including testimony of the drafter, may be admitted to explain and resolve the ambiguity. *In re Estate of Bergau,* at 436; *In re Estate of Torando,* 38 Wn.2d 642, 645, 228 P.2d 142, 236 P.2d 552 (1951).

There is no indication in the language of the will that the second clause was intended to express anything other than a description of the circumstances as they existed at the time of execution of the will. That the testator indicates that he owns separate property at the date of execution does not convey an intention to limit his bequest of sepa-

rate property to that described at the time of execution of the will. The testator is presumed to have known the law at the time of execution of his will and, consequently, would recognize that if his wife predeceased him community property would be transposed into his separate property. Nor does a finding that only separate property existed at the time of testator's death render the residuary clause meaningless. The residuary clause governed the contingency of the testator's wife surviving the death of the testator. In such event, he would have a one–half share of community property at his death that would pass through the residuary clause. This interpretation is supported by the fifth clause of the will wherein the testator provides that in the event his wife survives the testator, the executor will administer both his separate property and the community property belonging to the testator and his wife. From this provision we can infer that the testator was aware that if he survived his wife, community property would cease to exist and his estate would consist entirely of separate property at his death.

## CONCLUSION

We find no ambiguity in the will warranting admission of extrinsic evidence. The intent of the testator was to distribute all of the separate property owned by him at his death to his son, Arthur J. Mell.

We agree with the trial court's finding of no ambiguity in the Mell will, and distribution of the entire estate to his son Arthur Mell. The Court of Appeals decision is reversed and the trial court judgment is reinstated.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied May 27, 1986.