THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of: | No. 82684-1-I |
| ROBERT L. BACA, | DIVISION ONE |
| Deceased. | UNPUBLISHED OPINION |

ANDRUS, C.J. — Nicolas Rivas appeals an order extinguishing his right to purchase the home of his deceased brother, Robert L. Baca, and allowing the personal representative of Baca's Estate to sell it on the open market. We conclude the probate court did not abuse its discretion in authorizing the sale of Baca's home to satisfy Estate debts. We also conclude that Rivas's gift of a right of first refusal will be voided by this sale. We therefore affirm but do so for reasons different than those adopted by the probate court.

## FACTS

On April 8, 2017, one week before his death, Robert Baca executed a document entitled "The Robert L. Baca Revocable Living Trust" without the assistance of an attorney. In this document, Baca expressed his wishes for the distribution of his property and income on his death. The asset at issue in this appeal is a home located at 3709 S. 162nd Street in SeaTac, Washington (3709 Property), in which Baca and his long-time committed partner, Roseanna Russell,

resided for decades. Baca identified the 3709 Property in a list of assets that he "assign[ed], convey[ed] and deliver[ed] to this Living Trust." But Baca took no steps to formally convey title of the 3709 Property to the Living Trust, and, at his death, it remained encumbered by a mortgage of $101,978.08.

After Baca passed away, the individual identified as the trustee of the trust, Danita Stratton, filed a petition to open probate and to treat the "Living Trust" as Baca's will. Stratton identified the heirs and devisees under the will as Baca's partner, Russell; his brother, Nick Rivas; and his adult daughters, Toniette Lopez-Baca and Tonece Baca.

A probate court commissioner granted Stratton's petition and entered an order dated June 1, 2017, holding that the Living Trust

> shall be defined as the Last Will and Testament of Robert L. Baca. All references to Trustee of the Living Trust shall instead be interpreted to establish a personal representative. This is defined as such in order to effect Robert L. Baca's testamentary intent in distributing his assets upon his passing, regardless of the use[] and titling of the document as a trust.

None of Baca's heirs appealed this ruling and the probate has proceeded on the assumption that the Living Trust is, in fact, Baca's will.

Baca made two specific gifts relating to his interest in the 3709 Property:

> Upon the death of [Baca], and after resolving all applicable legal debts and obligations of [Baca], the [personal representative] will expeditiously act to distribute the remaining Property as directed in this section.

> [Baca] has designated one or more specific gifts (the "Specific Gifts") to be distributed prior to the distribution of the rest and residue of this [will]. Any Specific Gift that no longer exists as part of this [will] will be void. No Specific Gifts will be distributed until all applicable legal debts and obligations of [Baca] are resolved. The Specific Gifts to be distributed are as follows:

. . . .

> To Roseanna Russell of Seattle, Washington for their own use absolutely, the following: during her lifetime[,] a residence at 3709 S 162nd St (tax parcel noted in Schedule A) with funds from this [Will] to pay maintenance, mortgage, taxes, and her health expenses.
>
> . . . .
>
> To Nick Rivas of Seattle, Washington the first right of refusal to purchase 3709 S. 162nd St in Seattle WA at $135,000.00 for perpetuity or at the dissolution of this [will], of which the funds from the sale are deposited into this [will] and Roseanna Russell will reside there for the remainder of her lifetime.

(Emphasis added.)[1]

On January 14, 2021, a successor personal representative of Baca's estate, Amber Stratton, filed a motion for authorization to sell the 3709 Property, because Baca's mortgage lender contended that Baca's death triggered the due-on-sale clause of the deed of trust and threatened to foreclose if the Estate did not pay off the mortgage in full. Russell did not object to the sale, "conditioned on her retaining her life estate in a comparable property purchased using the proceeds generated from the sale." Rivas objected to the sale, asked the court to allow him to exercise his right of first refusal to purchase the property for $135,000, and sought an order requiring Russell to vacate the property.

---

[1] Russell brought an action to establish the existence of her and Baca's committed intimate relationship (CIR), for a court determination as to her equitable interest in Baca's property, and to quiet title in the 3709 Property and an adjacent parcel located at 3713 S. 162nd Street, the home in which Rivas resides, then titled in the names of Baca and Rivas. We separately resolved Rivas's appeal in the CIR case, affirming the finding of a CIR in Russell's favor and the quieting of title to the 3713 Property in appeal no. 82948-3-I. When Rivas initiated this appeal, the extent of Russell's CIR interest in the 3709 Property remained unresolved. Russell and the Estate have since settled the CIR case and the settlement has been approved by the probate court. The terms of the settlement and the court order approving it are not in the record of either appeal. We assume, however, that the Estate and Russell agreed that she has an equitable interest in the 3709 Property, separate and apart from the Estate's interest.

At a February 10, 2021 hearing, a second probate court commissioner concluded that the June 1, 2017 order dissolved Baca's Living Trust, thereby extinguishing Rivas's right of first refusal. The court entered an order authorizing the Estate to list the property with a real estate broker on the Northwest Multiple Listing Association. On a motion for revision, the superior court adopted the commissioner's findings of fact and conclusions of law. Rivas appeals.

## ANALYSIS

The sole issue on appeal is whether the trial court erred in granting the Estate's motion to sell the 3709 Property on the open market, rather than requiring the personal representative to sell it to Rivas for $135,000 under what he contends is a valid right of first refusal.

## Standard of Review

When probate decisions are made solely on declarations and written documents and not on witness credibility, we review those decisions de novo. *In re Estate of Bowers*, 132 Wn. App. 334, 339, 131 P.3d 916 (2006). Similarly, our interpretation of a will or trust instrument is a question of law that we review de novo. *In re Wash. Builders Ben. Trust*, 173 Wn. App. 34, 75, 293 P.3d 1206 (2013). Our goal is to ascertain the testator's intent. *In re Estate of Burks*, 124 Wn. App. 327, 331, 100 P.3d 328 (2004); *see also* RCW 11.12.230 ("All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them"). If possible, this intent must be determined from the four corners of the will. *Burks*, 124 Wn. App. at 331. The testator is presumed to have known the law at

the time the will was executed. *In the Matter of Estate of Mell*, 105 Wn.2d 518, 524, 716 P.2d 836 (1986). The testator is also presumed to be familiar with the surrounding circumstances that could affect the will's construction. *In re Estate of Price*, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994).

<u>Legal Effect of Admitting Living Trust into Probate as Will</u>

The Estate contends Rivas has no right to purchase the 3709 Property because the June 1, 2017 order admitting Baca's Living Trust into probate as a will constituted a "dissolution" of the trust which had the legal effect of extinguishing Rivas's right of first refusal. We disagree. The probate court did not dissolve the trust; it redefined that document as a will with an effective date of the date of its execution. The court did not extinguish Baca's specific gift to Rivas when it admitted his will into probate.

In its oral ruling, the second probate court commissioner held that Rivas lost the right to buy the 3709 Property by failing to exercise the right of first refusal when the court admitted the will to probate on June 1, 2017. The commissioner noted that the will "grants to Mr. Nick Rivas the right of first refusal for perpetuity or at the dissolution of this trust. And that can only mean obviously the earlier of those two items."[2] The commissioner concluded

> the evidence here is really overwhelming that the trust was dissolved, <u>to the extent there ever was a trust</u>, in June of 2017 when Commissioner Judson ruled that this was not a trust but a will. And so my ruling would be that to the extent that it was a right of first refusal for Mr. Nick Rivas, that right had to be exercised then, and his failure to do so means that it no longer exists.

(Emphasis added.)

---

[2] The probate court incorporated its oral ruling by reference into the order granting the Estate's motion to sell the 3709 Property.

We disagree with this reasoning. First, when Stratton filed the petition, she did not seek court authorization to "dissolve" Baca's Living Trust. She asked the court to characterize the document as, and to give it the legal effect of, a will. Neither Stratton nor any other party to this proceeding treated the trust as a valid trust.

Second, the court, when granting Stratton's petition, expressly held that the document would be treated as a will from the date of its execution. It did not require Stratton to take steps to dissolve the trust and to make a final distribution under the trust before accepting it into probate as Baca's will. The original probate court did not use the term "dissolve" when it held the trust was actually a will. No party appealed this order.

Third, Black's Law Dictionary defines the term "dissolution" as "[t]he act of bringing to an end; termination." BLACK'S LAW DICTIONARY 595 (11th ed. 2019). The document Baca executed stated that the trust "will terminate where the Property of [the trust] is exhausted through distributions." This event did not occur. In fact, the personal representative has made no distributions of Baca's assets. Because the trust did not "dissolve," Rivas's right of first refusal was not extinguished by the simple act of characterizing the trust as Baca's will.

The Estate alternatively argues that Rivas's right of first refusal does not exist because it was contingent on Baca first conveying title to the 3709 Property to the trust. We reject this argument as inconsistent with the June 1, 2017 order. The court explicitly held that the order was entered to effectuate Baca's testamentary wishes, not to defeat them. Regardless of the document's titling as

- 6 -

a trust, Baca clearly intended to gift Rivas a right of first refusal to purchase the 3709 Property for $135,000. The fact that Baca failed to convey title of the 3709 Property to the trust is immaterial because the court chose to give the trust document the legal effect of a will, not a trust, and the parties accepted this decision without objection. We thus conclude the probate court erred in concluding the trust "dissolved" and Rivas's right of first refusal was extinguished at that point in time.

<u>Legal Effect of Mortgage Encumbering 3709 Property</u>

While the probate court's reasoning was incorrect, the outcome was not because Rivas has no entitlement to purchase the 3709 Property until after all Estate debts are paid off in full.

Rivas and Russell disagree as to the legal effect of the existing mortgage on their respective gifts. Rivas contends he has a current right to purchase the home for $135,000, which would permit the personal representative to pay off the mortgage. Russell argues the will gifts her a life estate in the property free of any mortgage debt. We reject both arguments.

RCW 11.12.070 provides:

> When any real or personal property subject to a mortgage is specifically devised, <u>the devisee shall take such property so devised subject to such mortgage unless the will provides that such mortgage be otherwise paid</u>.

(Emphasis added.)

This statute applies to preemptive options to purchase real property at a fixed price, as well as life estates. *See McDonald v. Moore*, 57 Wn. App. 778, 781, 790

P.2d 213 (1990) (options); *In the Matter of Estate of Irwin*, 10 Wn. App. 2d 924, 932, 450 P.3d 663 (2019) (life estates).

In *Irwin*, this court held that under RCW 11.12.070, a life tenant who inherits this interest by will is responsible for paying mortgage payments during her life estate if the will does not provide other funds to cover this debt. 10 Wn. App. 2d at 929. Although it appears Baca believed other funds from his estate would be sufficient to pay for the maintenance, mortgage, and taxes on the home, the parties agree he did not anticipate that his lender would accelerate the mortgage debt and demand that it be paid in full on his death. Neither the Estate nor Russell have sufficient funds or other assets with which to cover this debt. And neither Russell nor Rivas are entitled to any specific gift until this debt is extinguished. For this reason, the court did not abuse its discretion in ordering the sale of the 3709 Property.

Baca's will provides that "[n]o Specific Gifts will be distributed until all applicable legal debts and obligations of the Grantor are resolved." It also states that if any specific gift "no longer exists as part of this [will]," the gift "will be void." As a result, Russell cannot inherit a life estate, and Rivas cannot inherit a right of first refusal, unless the 3709 Property remains an asset of the Estate after the mortgage debt is paid off. Because the Estate must sell that property to pay off the mortgage, it will not be an Estate asset and both gifts will become void at the time of this sale.[3]

---

[3] While in theory either Russell or Rivas could preserve their specific gift by paying off the mortgage debt, neither sought such relief from the probate court or from this court. Nor has either suggested that they have the right to pay off this or any other Estate debt to preserve this Estate asset.

Request to Remand to Different Judicial Officer

Rivas argues that on remand the case must be heard by a judicial officer. There is no basis for granting this request.

A party seeking a judicial reassignment for the first time on appeal must prove that "the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014). There is no evidence in the record supporting the contention that any judicial officer involved in this probate has prejudged any issues such that they are incapable of resolving any outstanding issues on remand. Rivas is thus not entitled to the reassignment to a different judicial officer.

Attorney Fees

Both the Estate and Rivas seek attorney fees on appeal. We decline both requests. RCW 11.96A.150(1) provides that "Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . in such amount and in such manner as the court determines to be equitable."

We conclude that neither the Estate nor Rivas substantially prevailed in this appeal. The Estate's theory that the June 1, 2017 order extinguished Rivas's right of first refusal was legally incorrect. And Rivas's contention that he has the right to purchase the 3709 Property for $135,000 and require Russell to vacate the

property is inconsistent with Washington law and the terms of Baca's will.  We decline to award attorney fees under RCW 11.96A.150(1).

CONCLUSION

Although the court erred in holding that admitting Baca's will into probate extinguished Rivas's right of first refusal to purchase the 3709 Property, we conclude that both the life estate that Baca gifted to Russell and the right of first refusal that he gifted to Rivas are subject to the Estate's mortgage debt.  Because the Estate must sell this property to pay off this debt, both gifts will be voided by the sale.  We thus affirm the order authorizing the Estate to sell the 3709 Property.

Affirmed.

Andrus, C.J.

WE CONCUR:

Coburn, J.

Smith, A.C.J.