# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>SHARON MARIE O'HARA,<br><br>Deceased.<br><br>KRISTINA C. UDALL, as Administrator of the ESTATE OF SHARON MARIE O'HARA,<br><br>Respondent,<br><br>v.<br><br>FELECIA J. O'HARA, as Administrator of the ESTATE OF CHARLES W. O'HARA,<br><br>Appellant. | No. 57421-7-II<br><br>UNPUBLISHED OPINION |

CHE, J. — The Estate of Charles O'Hara appeals the trial court orders determining that Charles breached his fiduciary duties, determining that the Estate of Sharon O'Hara had a community property interest in Charles's retirement funds after Sharon's death, crediting that interest to the Estate of Sharon, and awarding the Estate of Sharon damages calculated using a prejudgment interest rate of 12 percent.

Sharon and Charles O'Hara were married for almost 40 years. Sharon executed a new will in 2017 revoking all prior wills and changing the residuary beneficiary from Charles to the University of Washington, among other changes. Eventually, Charles probated Sharon's earlier 1983 will, not the 2017 will, and he remarried. Charles failed to notify the court or other interested parties about the 2017 will, and he did not maintain an inventory. Charles used the Estate of Sharon's assets for his own benefit for 16 months before he died. The Estate of Sharon filed a creditor's claim against the Estate of Charles for a breach of fiduciary duties. The Estate of Sharon sought its community property interest in some of Charles's retirement accounts, and eventually, the Estate of Sharon filed a Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, petition.

We hold that (1) Sharon's community property interest in the contested retirement funds did not automatically revert to Charles after her death, (2) the trial court had subject matter jurisdiction over the retirement funds, (3) the trial court did not err by crediting Sharon's interest in the retirement funds to her estate even though her will did not specifically reference that interest, (4) Charles breached his fiduciary duties to the Estate of Sharon, and (5) the trial court abused its discretion by awarding damages calculated using a prejudgment interest rate of 12 percent as there was no evidence about the rate of return the improperly withheld funds would have yielded. We deny both parties attorney fees on appeal and affirm the grant of attorney fees below.

We vacate the damages award and remand for the trial court to determine if damages calculated using a prejudgment interest rate of 12 percent per annum is warranted based on the evidence. We otherwise affirm.

FACTS

Sharon and Charles O'Hara married in 1978. Sharon executed a will in 1983 devising her residuary estate to Charles. In 2016, Sharon executed a new will in 2017. The 2017 will revoked all prior wills. The 2017 will devised Sharon's entire estate, less two specific bequests to charitable organizations, via a residuary clause "to the University of Washington for medical research in COPD and scholarships for women in the medical field." Clerk's Papers (CP) at 266. The estate planning attorney retained the 2017 will after Sharon executed it.

Sharon died on June 7, 2017. Charles was appointed as the personal representative under the 2017 will. Charles married Felecia O'Hara just days after being appointed as the personal representative for the Estate of Sharon.

The estate planning attorney gave Charles the original 2017 will with instructions about the time period for probating the will. But Charles did not probate the 2017 will as directed, and the original 2017 will has never been found. And Charles did not notify the court or Sharon's beneficiaries about the 2017 will.

About a year after Sharon's death, Charles probated Sharon's 1983 will, not the 2017 will, in Jefferson County. Charles did not maintain an inventory or keep accounting records for the Estate of Sharon. Instead of properly administering the estate under Sharon's 2017 will, Charles used the assets of the Estate of Sharon for his own benefit for 16 months.

In December 2017, Charles claimed a Kitsap Credit Union account with a date of death value of $30,161.33. The Kitsap Credit Union account was established in 1996 and was titled in Sharon's name. The Estate of Sharon had a community property interest of $15,080.66 in the account. Charles submitted a small estate affidavit to claim this account by asserting that the net

3

probate estate did not exceed $100,000 and that he was entitled to full payment of the Kitsap

Credit Union account.[1]

Towards the beginning of 2018, Charles cashed out or converted a Fidelity IRA in his

name valued at $245,427.97 as of June 1, 2017, which the Estate of Sharon later claimed a

community property interest in. Charles also cashed out or converted a USAA Annuity titled in

his name valued at $360,087.32 as of January 1, 2018, which the Estate of Sharon later claimed a

community property interest in.[2] Charles indirectly invested some of the proceeds from the IRA

conversions into several distressed rental properties in Florida.

Charles died in October 2018. Felecia was appointed as the personal representative of his

estate. After Charles's death, Sharon's grandson probated a copy of Sharon's 2017 will in

---

[1] Charles also claimed a Kitsap bank account with $220.04. The Estate of Sharon had a $110.02 community property interest in the account. Additionally, Felecia, Charles's wife at that time, claimed Sharon and Charles' entire joint federal tax refund from 2015. The Estate of Sharon has a $1,400 community property interest in that tax refund.

[2] The trial court made the following findings relating to Charles's IRAs:

> C.    On or about January 22, 2018, Charles cashed out or converted the Fidelity IRA . . . titled in his name, in which Sharon had a community property interest as a nonparticipating spouse. RCW 6.15.020(6). He moved these funds into a rollover IRA with Charles Schwab. The Fidelity IRA was valued at $245,427.97 as of June 1, 2017, and as such, Sharon's community property interest in that asset as of her date of death was an estimated **$122,713.99**.

> D.    On or about February 5, 2018, Charles cashed out or converted the USAA Annuity . . . titled in his name, in which Sharon had a community property interest, into a rollover IRA with Charles Schwab. The USAA annuity was valued at $360,087.32 (as of January 1, 2018, which is the closest value to the date of Sharon's death that USAA would provide short of subpoena). Sharon's estimated community property interest in that asset was **$180,043.66**.

CP at 267.

Kitsap County. Unaware of the probate proceeding in Jefferson County, the trial court appointed him as the personal representative. Later, the parties agreed to cancel the Kitsap probate proceeding.

The University of Washington petitioned the Jefferson County trial court to admit the 2017 will and appoint Kristina Udall, an uninterested attorney, as the administrator of the Estate of Sharon. The Jefferson County trial court appointed Udall as the administrator of the estate in December 2018. The University of Washington expended $14,897.80 in attorney fees to untangle legal issues surrounding Charles probating the incorrect will.

In May 2019, the Estate of Sharon filed a creditor's claim against the Estate of Charles for a breach of fiduciary duties in Kitsap County, seeking Sharon's interest in the aforementioned accounts. The Estate of Charles rejected that claim and, eventually, the Estate of Sharon filed a TEDRA petition in Kitsap County. In that petition, the Estate of Sharon sought damages for delaying the probate proceeding calculated using a prejudgment interest rate.

In August 2022, the Kitsap County trial court determined that Charles breached his fiduciary duties to the Estate of Sharon by, among other things, not notifying the beneficiaries in the 2017 will, not marshalling estate assets for the benefit of the beneficiaries, not giving notice to Sharon's statutory heirs, and not disclosing the existence of the 2017 will.

The trial court awarded the Estate of Sharon attorney fees and the estate's net community property interest. Additionally, the trial court found that the Estate of Sharon was damaged by the 16-month delay caused by Charles and awarded damages calculated using a prejudgment interest rate of 12 percent "based on the date of death value" of the Estate of Sharon. CP at 272.

The Estate of Charles appeals the Kitsap County trial court's findings and conclusions resolving the TEDRA action.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review the trial court's factual findings for substantial evidence.[3] *Bartlett v. Betlach*, 136 Wn. App. 8, 18, 146 P.3d 1235 (2006). We then review whether the legal conclusions are supported by the findings do novo. *Id*.

We will review findings of fact erroneously labeled as conclusions of law for substantial evidence. *Karanjah v. Dep't of Soc. & Health Servs.*, 199 Wn. App. 903, 916, 401 P.3d 381 (2017). "Substantial evidence means evidence that 'is sufficient to persuade a rational, fair-minded person that the finding is true.'" *Id*. (quoting *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012)). "Unchallenged findings are verities on appeal." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

### II. THE RETIREMENT FUNDS CONSTITUTED COMMUNITY PROPERTY ASSETS EVEN AFTER SHARON'S DEATH

The Estate of Charles argues that the Estate of Sharon's community property interest in Charles's retirement funds reverted to Charles upon Sharon's death because the 2017 will did not specifically reference Charles's retirement accounts. We disagree.

---

[3] Although the Estate of Charles assigns error to factual findings 14(C) and (D), the estate does not further develop that argument in its brief. We decline to review those findings for the sufficiency of the evidence as the estate has waived the argument by providing no argument to that end. *Matter of L.S.*, 23 Wn. App. 2d 672, 686, 517 P.3d 490 (2022); RAP 10.3(g).

Generally, property acquired after marriage is community property. RCW 26.16.030. When a spouse dies, the former community property becomes the separate property of the decedent's estate and the surviving spouse. *In Re of Estate of Politoff*, 36 Wn. App. 424, 426-27, 674 P.2d 687 (1984); *Edmonds v. Ashe*, 13 Wn. App. 690, 695, 537 P.2d 812 (1975).

The Estate of Charles does not contest that the two retirement funds constituted community property during the marriage. Rather, the Estate of Charles contends that such interest passed to it "by operation of law outside of the probate court—unless, under RCW 6.15.020(6), Charles and Sharon had explicitly agreed to handle the IRA differently." Br. of Appellant at 29.

The Estate of Charles does not cite authority for the proposition that the deceased spouse's community property interest in the surviving spouse's retirement funds revert to the surviving spouse absent a specific bequest or reference regarding the retirement funds. And RCW 6.15.020(6) does not include any such language. As support for its position, the Estate of Charles focuses on whether the court had jurisdiction or other authority to transfer the retirement funds to Sharon under several statutes. But the default rule in Washington is that Sharon's community interest in Charles's retirement funds became her estate's separate interest at her death. *Politoff*, 36 Wn. App. at 426-27.

As the Estate of Charles fails to provide authority to support his novel proposition that such interest reverts to him at death absent a specific bequest or reference, we decline to seek out authorities to support the Estate of Charles's position when counsel has provided none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). As such, the Estate of

Sharon maintained a separate property interest in Charles's retirement funds after Sharon's death.[4]

### III.  AUTHORITY TO CREDIT THE RETIREMENT FUNDS

The Estate of Charles argues that the trial court erred by transferring Charles's retirement funds through a residuary clause in Sharon's will, improperly applying RCW 6.15.020(6).  The Estate of Charles also argues that the trial court lacked jurisdiction to enforce such a credit.  We disagree.

We review the meaning of a statute de novo.  *Manary v. Anderson*, 176 Wn.2d 342, 350, 292 P.3d 96 (2013).  When engaging in statutory interpretation, we start by looking at the statute's plain meaning.  *Id*. at 352.  When the meaning is plain on the face of the statue, we give effect to that meaning.  *Id*.  "Our plain meaning inquiry focuses on the words of the statute and 'is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'"  *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).  "Further, a court must not add words where the legislature has chosen not to include them."  *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

A.      *The Trial Court Had Subject Matter Jurisdiction*

The Estate of Charles argues that the trial court lacked subject matter jurisdiction over Charles's IRAs because RCW 11.02.005(13) eliminates the court's jurisdiction over IRAs.  We disagree.

---

[4] The precise value of the Estate of Sharon's community property interest does not appear to be challenged on appeal.

The Washington Constitution grants superior courts broad original jurisdiction over civil controversies where jurisdiction is not exclusively vested in some other court. WASH. CONST., art. IV, § 6. Subject matter jurisdiction questions are reviewed de novo. *In re Marriage of McDermott*, 175 Wn. App. 467, 479, 307 P.3d 717 (2013). "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 209, 258 P.3d 70 (2011). Under TEDRA, superior courts have a broad authority to "Probate or refuse to probate wills, appoint personal representatives, administer and settle the affairs and the estates of incapacitated, missing, or deceased individuals including but not limited to decedents' nonprobate assets; administer and settle matters that relate to nonprobate assets and arise under chapter 11.18 or 11.42 RCW." RCW 11.96A.040(3).

TEDRA's broad grant of authority clearly covers the decedent's interest in the surviving spouse's IRA. The alleged error here goes to something other than subject matter jurisdiction.

To the extent Charles is arguing that RCW 11.02.005(13) otherwise deprived the trial court of authority to credit the retirement funds to the Estate of Sharon, we disagree.

RCW 11.02.005(13) generally defines a "nonprobate asset" as "rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will." RCW 11.02.005(13). Under that chapter, the term nonprobate asset includes IRAs. Historically, a person could not modify nonprobate asset arrangements through a new will. *Manary*, 176 Wn.2d at 351.

But the Testamentary Disposition of Nonprobate Assets Act, chapter 11.11 RCW, "allows the owner of a limited class of nonprobate assets to dispose of those assets by will." *Id*.

9

RCW 11.02.005(13) goes on to provide, "[f]or the definition of 'nonprobate asset' relating to testamentary disposition of nonprobate assets, see RCW 11.11.010(7)." And RCW 11.11.010(7)(a)(v) specifically excludes IRAs from the definition of nonprobate assets.

Here, the clause attempting to dispose of the IRAs is the residuary clause in Sharon's will, which makes this a testamentary disposition. And the IRA is typically a nonprobate asset under RCW 11.02.005(13). But, RCW 11.02.005(13) refers us to RCW 11.11.010(7)(a)(v) to determine whether IRAs are also nonprobate assets for purposes of applying chapter 11.11 RCW, the Testamentary Disposition of Nonprobate Assets Act. Specifically, for purposes of that chapter, IRAs are excluded from the definition of nonprobate assets. The result is that under the statute, IRAs, which are typically nonprobate assets, can be disposed of through a subsequent will. Thus, the IRAs in question are probate assets in this context. And the Estate of Charles's argument fails.

B.      *The Trial Court Did Not Err in Crediting the Retirement Funds*

The Estate of Charles argues that the trial court erred by crediting the retirement funds as Sharon's will did not specifically reference or bequeath those funds. First, the Estate of Charles maintains that RCW 6.15.020(6), by using the word "may," imposes a requirement that Sharon must have specifically bequeathed or otherwise made a specific reference to the retirement funds in her will to credit her interest in those funds after death. Br. of Appellant at 28. Second, the Estate of Charles maintains that RCW 26.16.030(2) required Sharon to gather the implied or express consent of Charles before devising community property. We disagree.

First, chapter 6.15 RCW relates to personal property exemptions from judgments. Generally, RCW 6.15.020(3) provides that certain benefits, like annuities and IRAs, are exempt

10

from execution, attachment, garnishment, or seizure—with certain exceptions to that exemption. To that end, RCW 6.15.020(6) provides a relevant exception:

> Unless prohibited by federal law, nothing contained in subsection (3), (4), or (5) of this section shall be construed as a termination or limitation of a spouse's community property interest in an employee benefit plan held in the name of or on account of the other spouse, who is the participant or the account holder spouse. Unless prohibited by applicable federal law, at the death of the nonparticipant, nonaccount holder spouse, the nonparticipant, nonaccount holder spouse *may* transfer or distribute the community property interest of the nonparticipant, nonaccount holder spouse in the participant or account holder spouse's employee benefit plan to the nonparticipant, nonaccount holder spouse's estate, testamentary trust, inter vivos trust, or other successor or successors pursuant to the last will of the nonparticipant, nonaccount holder spouse or the law of intestate succession, and that distributee may, but shall not be required to, obtain an order of a court of competent jurisdiction, including a nonjudicial binding agreement or order entered under chapter 11.96A RCW, to confirm the distribution.

(emphasis added).

While it is true that RCW 6.15.020(1) provides that the State's policy is to protect retirement income, the language in RCW 6.15.020(6) that "nothing contained in subsection (3), (4), or (5) . . . shall be construed as a termination or limitation of a spouse's community property interest in an employee benefit plan held in the name of or on account of the other spouse, who is the participant or the account holder spouse[]" shows the Legislature's intent not to limit or terminate such community property interests. In light of that, we decline to interpret the word "may" as imposing a requirement that the deceased nonaccount holder spouse must have made a specific bequest of or otherwise reference the retirement funds in their will to transfer their community property interest in such funds.

Moreover, that statute does not state that a residuary clause is insufficient to transfer such an interest. And as stated above, we do "not add words where the legislature has chosen not to include them." *Rest. Dev., Inc.*, 150 Wn.2d at 682. This argument fails.

11

Second, in relevant part, RCW 26.16.030 provides, "(1) Neither person shall devise or bequeath by will more than one-half of the community property. (2) Neither person shall give community property without the express or implied consent of the other." The Estate of Charles maintains that subsection two prevented Sharon from devising the retirement funds without his consent.

Subsection one pertains to transfers of community property via the will, supported by the use of terms, "devise or bequeath." Subsection two does not state that neither person shall devise or bequeath by will community property without the consent of the other. Instead, subsection two merely uses the verb "give." And courts have applied subsection two in the context of inter vivos transfers. *See, e.g.*, *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 82, 701 P.2d 1114 (1985); *In re Marriage of Mueller*, 140 Wn. App. 498, 509, 167 P.3d 568 (2007); *Bosone v. Bosone*, 53 Wn. App. 614, 618, 768 P.2d 1022 (1989). Based on that subsection's plain language and how state courts have applied subsection two, we interpret subsection two as inapplicable to testamentary transfers.

We hold that the trial court did not err by crediting the retirement funds.

IV. BREACH OF FIDUCIARY DUTY

The Estate of Charles argues that Charles did not breach a fiduciary duty to the Estate of Sharon by using and making investment decisions in his own IRAs. We disagree.

We review conclusions of law de novo. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

The trial court ruled that Charles

breached his fiduciary duty of loyalty, due diligence and good faith when he, as PR, among other things, failed to notify the Sharon Estate's true beneficiaries of the

12

existence of the true Last Will; when he failed to marshal assets into the Estate for the benefit of the true beneficiaries; when he used Estate assets for his benefit to the exclusion of the Estate's true beneficiaries; when he failed to give statutory notices required to Sharon's statutory heirs; and when he failed to disclose to the Court the existence of the true Last Will.

CP at 271.

The Estate of Charles did not address many of the aforementioned grounds on appeal, nor did it provide citation to authorities. Its only argument is that IRA funds are nonprobate assets, and so, Charles owed no fiduciary duty to manage those funds.

Notwithstanding the fact that the Estate of Charles failed to cite authority to support that proposition,[5] the Estate's argument fails because, for purposes of testamentary disposition of nonprobate assets, an IRA is excluded from the definition of a nonprobate asset. RCW 11.11.010(7)(a)(v).

## V. PREJUDGMENT INTEREST

The Estate of Charles argues that the trial court abused its discretion by awarding pre-judgment interest on an unliquidated claim, for awarding prejudgment interest on an amount that was not awarded as damages, and for awarding prejudgment interest without any supporting factual findings showing damages. The Estate of Sharon frames the prejudgment interest award as an award of permissible equitable damages. We hold that the trial court abused its discretion by awarding damages calculated using a prejudgment interest rate of 12 percent.

We review prejudgment interest awards for an abuse of discretion, which occurs where the discretion was exercised in a manifestly unreasonable manner or on untenable grounds.

---

[5] We are not required to search out authorities to support a proposition when counsel has provided none. *DeHeer*, 60 Wn.2d at 126.

*Arzola v. Name Intelligence, Inc.*, 188 Wn. App. 588, 592, 595, 355 P.3d 286 (2015).

Prejudgment interest awards are appropriate when a party wrongly retains funds that another

party is entitled to as it deprives the rightful owner of the use value of their money. *Arzola*, 188

Wn. App. at 595.

More generally, courts have discretion to employ an equitable remedy to place the

beneficiary in the position they would have been in if the administrator properly administered the

estate. *See Gillespie v. Seattle-First Nat'l Bank*, 70 Wn. App. 150, 173, 855 P.2d 680 (1993);

*see also Baker Boyer Nat'l Bank v. Garver*, 43 Wn. App. 673, 686, 719 P.2d 583 (1986). Trial

courts have broad discretion in shaping equitable remedies. *Bloor v. Fritz*, 143 Wn. App. 718,

739, 180 P.3d 805 (2008).

Here, we determine that the trial court calculated damages for breach of fiduciary duties

and a 16-month delay by using prejudgment interest as a basis; it did not simply award

prejudgment interest.[6] Our determination is consistent with the fact that the Estate of Sharon

sought damages for delay in the form of prejudgment interest, and the final order's language:

"[d]amages shall be calculated at the prejudgment rate of 12%." CP at 272. We next analyze

whether there were findings to support that award.

A.      *Supporting Findings of Fact*

The trial court here found, "Charles [] breached his fiduciary duty of loyalty, due

diligence and good faith." CP at 271. Charles's "delay set . . . [Sharon's] Estate back 16 months

from its final distribution to the Estate's true beneficiaries, and meanwhile Charles used the

---

[6] Because we determine that the trial court did not simply award prejudgment interest, we need
not address the Estate of Charles's argument that the trial court abused its discretion by awarding
prejudgment interest on an unliquidated claim.

assets for his exclusive benefit, *while the assets (home, cars, funds, money) were wasted, deteriorated, and converted unlawfully*." CP at 271 (emphasis added). The trial court labeled that finding as a conclusion of law. We determine that it is a finding of fact and review it for substantial evidence.

The Estate of Charles specifically challenges the waste, deterioration, and conversion language of the finding. There is ample evidence to persuade a rational, fair-minded person that the challenged portion of the finding is true, including (1) Charles used the assets of Sharon's Estate for his exclusive benefit, (2) he did not marshal the assets he converted back into Sharon's Estate, (3) he failed to pay certain property taxes, (4) he failed to perform adequate maintenance, and (5) he failed to keep proper accounting records. And the Estate of Charles failed to assign error to any of the following factual findings, and so, they are verities: (1) Charles did not timely file the 2017 will despite instructions to do so, (2) did not probate any will for 12 months, (3) Charles converted community property assets for his own exclusive use, and (4) "[h]e failed to take any steps toward properly administering Sharon's Estate under the proper will. CP at 266-68. *Robel*, 148 Wn.2d at 42.

Additionally, there is evidence in the record that after Charles converted the IRAs, he invested them into a solo 401(k) with Charles Schwab and then indirectly invested proceeds into several distressed rental properties in Florida. And the Estate of Charles seems to concede that there was a "diminution in value of those funds." Br. of Appellant at 32.

Thus, this finding is supported by substantial evidence. But the Estate of Charles is correct that this finding does not show the precise diminution in value or the magnitude of such damages. We next analyze the implications of that.

15

B.      *The Measurement of Damages Must Be Supported by the Evidence.*

In *Gillespie*, beneficiaries of a testamentary and de facto trust sought damages for a breach of fiduciary duty against the trustee bank. 70 Wn. App. at 156. Division One reasoned that the trial court may grant whatever relief is warranted to place the trust in the same position as if the breach of fiduciary duties had not occurred. *Id*. at 173. The trial court awarded damages and compounded the damages award by four percent per annum. *Id*. at 175-76. Division One affirmed the award, reasoning that the plaintiff showed lost appreciation with reasonable certainty by producing the testimony of two experts that four percent was an appropriate rate of appreciation. *Id*.

In *Baker Boyer*, the trial court determined the trustee bank breached its fiduciary duties and awarded damages. 43 Wn. App. at 677-78. Division Three reversed because the trial court should have considered the trust's lost appreciation in equity securities which would have been realized but for the breach of fiduciary duties. *Id*. at 686. There, the trial court found that stock market equity, as measured by broad stock market indexes, rose around 20-22 percent during the trust administration. *Id*. at 686.

The aforementioned cases involved awards based on a measurement of damages supported by evidence. In contrast, the Estate of Sharon did not present evidence showing that if the Estate of Charles had timely distributed the contested funds, that those funds would have yielded a 12 percent per year rate of return during the relevant time period. And there are no findings to that end. Rather, the Estate of Sharon simply submitted a request for damages calculated at a typical prejudgment interest rate of 12 percent for the delay in distribution.

16

Given the lack of evidence regarding the lost benefit of the improperly withheld funds, we hold that the trial court abused its discretion by awarding damages calculated using a prejudgment interest at a rate of 12 percent per annum.

## VI.  TRIAL COURT ATTORNEY FEES

The Estate of Charles appears to argue that if we determine that Sharon's interest in the retirement funds reverted to him after her death, then the trial court erred in awarding attorney fees for the TEDRA action.  Because we conclude that Sharon's interest did not revert, we decline to address this contention and we affirm the trial court's award of fees below.

## VII.  APPELLATE ATTORNEY FEES

The Estate of Charles requests attorney fees on appeal under RCW 11.96A.150.  The Estate of Sharon requests attorney fees on appeal under the same statute.

RAP 18.1 allows a party to recover reasonable attorney fees on appeal if the party properly requests it and if applicable law grants the party the right to recover such fees.  RCW 11.96A.150(1) provides that we have discretion to order costs, including reasonable attorney fees, on appeal.  Because both parties prevail on substantial issues on appeal, we decline to award attorney fees to either party.

## CONCLUSION

We vacate the trial court's damages award and remand for the trial court to determine if damages calculated at a prejudgment interest rate of 12 percent per annum is warranted based on the evidence or whether some other amount is warranted.  We otherwise affirm.  We decline to award attorney fees to either party on appeal.

No. 57421-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Cruser, C.J.